1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y and Erie
R. R. Co.

THE HUDSON AND DELAWARE CANAL COMPANY *vs.* THE
NEW-YORK AND ERIE RAIL ROAD COMPANY.

Where a rail road corporation is authorized by statute to construct its road
upon a particular route, a mere temporary injury to a canal which has
been previously authorized and constructed, and which can be compen-
sated in damages, is not sufficient to justify the granting of an injunction
to stop the progress of the work.

But if the rail road corporation is constructing its rail way upon such route
without authority, and such construction will probably injure the works of
the canal company, an injunction will be granted to restrain the construc-
tion of the rail way upon the route of the canal.

It is no objection to the construction of a rail road on the route of a canal
that the road cannot be traversed by steam engines, after it is completed,
without frightening the horses upon the towing path of the canal, so as to
destroy the navigation of such canal. But if the rail road company at-
tempts to use steam engines upon the road, instead of horses, after the road
is completed, the remedy of the canal company is to apply for an injunc-
tion to restrain the use of such engines.

Where the charter of a rail road company requires the whole line of the road
to be surveyed and located, and the certificate of location to be filed in the
clerk's office, before the commencement of the work, the corporation is
not authorized to change the route of its road after it has been once located,
and a certificate of such location made and filed.

If a rail road corporation, which is authorized by statute to select a route for
the road, and to construct the road thereon, cannot construct its road with-
out imminent danger to the works of a canal company previously con-
structed, under a similar authority from the legislature, the rail road com-
pany will be restrained by injunction from constructing its road upon that
route.

THIS was an application for an injunction, to restrain October 19.
the New-York and Erie Rail Road Company, and its offi-
cers and agents, from constructing the railway of that com-
pany between the Delaware section of the complainants'
canal and the river Delaware, or on the berme side of that
section between the canal and the crown of the cliffs
above the same. The bill, after setting forth the original
act incorporating the Delaware and Hudson Canal Compa-
ny, for the purpose of making a slack water navigation be-
tween the rivers Delaware and Hudson, the act of April,
1824, giving to that company the same powers, privileges,

1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y. and Erie
R. R. Co.

and authority, for the purpose of making a canal or slack water navigation from Carpenter's point on the river Delaware, to the mouth of the river Lackawaxen ; and the several acts of the legislature of Pensylvania on the sub-ject of such canal and the rail road connected therewith, and that the complainants, in pursuance of the powers and privileges conferred upon them by the said several acts, had established a complete line of communication from the Hudson river at Eddyvile for the distance of about one hundred and twenty-five miles, by means of a canal from the Hudson to the mouth of the Lackawaxen, and up the last mentioned river to its head waters, and by rail road from thence to the mining district of Pennsylvania, and after setting forth the extensive and valuable interests which would be jeoparded by any interruption of the na-vigation of their canal, proceeded to state, that in the con-struction of the canal, from a point on the Delaware oppo-site the mouth of the Lackawaxen towards the Hudson, the complainants were compelled, by the rough and mountain-ous character of the country, to follow the course of the river Delaware, about 24 miles to Port Jervis ; that for a portion of that distance, which is called the Delaware section, their canal was on the brink of the river's bank and often encroached upon the bed of the river ; that the channel or pass through which the river flows along nearly the whole of that section of the canal was very narrow, without any strand or level shore, the banks of the river rising from the water's-edge in almost perpendicular cliffs of rock, so that the complainants were compelled to create an artificial bed for their canal by making wide excavations in the rocky cliffs in some places, and in others by building up, for miles in extent, a foundation of broken rocks, from ten to twenty-five feet high, between the cliffs and the cen-tre of the stream, and that on such foundation the greater part of the canal was built, together with the towing path, which was on the river side of the canal ; that owing to the narrowness of the channel of the river it frequently be-came necessary, during freshets, which were common there,

1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y. and Erie
R. R. Co.

to cut away the bank of the canal, to turn the waters of the river into its channel, or bed, lower down, to prevent the destruction of the canal ; that it was impossible to make a rail road between the river and the top of the cliffs, on either side of their canal, without depriving the complainants of the beneficial use of that section of the canal ; and that the making of such rail road would entirely destroy many of the privileges and advantages secured to them by their charter, and by the several acts of the legislature relating to the same. And the bill particularly specified the various ways in which the making of the rail road by the side of the canal, on that section, would injure the navigation and endanger the existence of the canal.

The complainants further stated, in their bill, that the defendants had applied to them for permission to construct their rail road between the river and the cliffs, on this section of the canal, which permission was refused, absolutely and unqualifiedly ; notwithstanding which refusal, the defendants threatened to construct their rail road on that route, and had proceeded to lay out and survey the same as the route of their road, and that a great number of workmen had collected for the purpose of proceeding in the construction of the railway as soon as the weather would permit. They further alleged that the route thus surveyed was a departure from the line of the rail road as formerly surveyed and adopted by the company, which line passed through the interior of the county of Sullivan, and struck the Delaware at the Collicoon creek thirty miles above the mouth of the Lackawaxen ; upon which original route, as the New-York and Erie Rail Road Company had stated in a public report, published by them in February, 1841, the road was under contract from the Collicoon creek, sixty-five miles, to Middletown, in the county of Orange. The bill also charged that the New-York and Erie Rail Road Company had not the pecuniary ability, or other means, of making good the damage which the complainants would sustain by the construction of the road adjacent to the canal on the Delaware section thereof; their

1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y. and Erie
R. R. Co.

road, the only property of the company, being heavily mortgaged to the state.

The bill was sworn to by the president of the Delaware and Hudson Canal Company ; and was also supported by the affidavits of the chief engineer and of the agent of the company, showing the situation of the land, &c., upon the Delaware section of the canal, and the injury and danger to the works of that company by the proposed construction of the rail road at the place contemplated. And in opposition to the application for an injunction, the answer of the defendants was read, denying some of the allegations in the bill, particularly that the construction of the road in the place proposed would endanger the canal of the complainants, as stated in the bill ; and showing a contemplated benefit to the New-York and Erie Rail Road Company, of two and a half millions of dollars, by the making of their road in the place now contemplated, instead of making it through the interior of Sullivan county where the route of the road was originally surveyed. The defendants, in their answer, also denied that any work had been done on the original route of the rail road between the Collicoon creek and the point of departure of the new route near Port Jervis, or that the route first proposed had ever been formally designated or located between those points, so as to deprive the company of the power to select a different route for that part of their road. To the answer the defendants annexed maps of the survey of the new route, showing the location of the centre line of the road, and its distance from the waters of the canal for the entire route upon the Delaware section.

*D. Lord, jun., & G. A. Bicknell,* for the complainants.

*W. Kent & Geo. Wood,* for the defendants.

THE CHANCELLOR. The question presented for consideration in this case is one of very great consequence to the complainants, if their apprehensions of injury to their canal

from the making of the rail road upon its margin are well founded. And it is also of vast importance to the New-York and Erie Rail Road Company, if its officers and agents are right in their estimate of the benefit it will derive from the adoption of the contemplated route for its road, instead of the more northern location through the interior of the county of Sullivan. If it is impossible to construct the road by the Delaware route without destroying the navigation of the canal and the valuable interests which have grown up in connection with that artificial line of internal communication, the defendants certainly cannot be permitted to proceed and make their road there ; at least until provision has been made by law to compensate the owners of the canal for the value of their property which will be thus destroyed. On the contrary, if the road can be thus constructed without any material detriment to the rights or the property of the complainants, it appears to be a matter of vital importance to the interests of the rail road company, that such company should be permitted to construct their road in the valley of the Delaware ; even if the difference in the cost of the road, and of its value when completed, would be but a tenth of what they estimate the difference to be between a rail road running through the valley of the Delaware, and one constructed on the route as originally surveyed, from the Collicoon creek through the interior of Sullivan county.

There can be no doubt of the right of this court to interfere in a case of this kind, where the consequence of a refusal would be to permit the defendants to do a material and irreparable injury to the complainants' property. But if the defendants are authorized by law to construct their road on this route, a mere temporary injury, which could be compensated for in damages, would not justify this court in stopping the progress of a great public work, although that work is nominally made by a joint stock company. The papers before me, however, show such a probability of injury by the construction of the rail road upon the line of the canal, that I should not hesitate to grant an injunction

1841.

Hudson and Delaware Canal Co.
v.
N. Y. and Erie R. R. Co.

1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y. and Erie
R. R. Co.

at once, if the complainants had succeeded in showing that the rail road company had already located its road upon the more northerly route, so as to preclude them from changing such location without the consent of the legislature. (*See* 1 *Nicholl & Hare's Railway cases*, 135.) But I am satisfied that the complainants have failed in establishing the fact that the road had been legally located upon the northerly route.

By the fourth section of the original act of incorporation of the New York and Erie Rail Road Company, (*Laws of* 1832, *p.* 404,) the directors, after their examinations and surveys had been completed, were to select, and by certificates under their hands and seals, to designate the line, course, or way, which they should deem most advantageous for their rail road, and to file one of such certificates in the office of the register of the city of New-York, and one in the clerk's office of each of the counties through which the rail road should pass; which line, as thus designated, was to be deemed the line on which the corporation should construct its road. Under that act it was probably necessary for the company to designate the whole line of the road from the city of New-York to Lake Erie, and to file the certificates thereof in the proper offices before they proceeded to construct any part of the road; and before they could acquire the legal title to lands, for the scite of the road, by purchase. Certainly it would have been necessary for them to do so before they could have been authorized to enter upon the lands of individuals, without their consent, for the purpose of making the road over the same, or to apply to the vice chancellor for the appointment of commissioners to appraise the damages of the owners of such lands. And when the line of the road had been thus designated by the directors, they would not have been authorized to change the route of the same without the authority of a subsequent act of the legislature, if such change interfered with the rights of any individual, or corporation, or the interests of the public. It is very evident, however, that no such designation of the whole line of the

1841.

Hudson and
Delaware Ca-
nal Co.
v.
N. Y. and Erie
R. R. Co.

road was ever made. For by the amendatory act of May, 1835, the company are authorized to commence their road at any point in the route designated therefor, and to file certificates from time to time, designating sections of the line, course, or way of such road, in the offices of the clerks of the respective counties through which the same shall pass, as they proceed in the location thereof. (*Laws of* 1835, *p.* 287.) Under the last mentioned act the certificates produced by the complainants on the hearing of this application, have been made and filed. And if the counsel for the Hudson and Delaware Canal Company are right, in supposing that such certificates embrace any part of the original route, as surveyed from the Collicoon creek eastwardly through the interior of the county of Sullivan, which cannot be connected with the proposed route along the Delaware section of the canal, the rail road company is concluded by that location; and it cannot now be changed without the authority of a new act of the legislature.

Upon examining these certificates, however, I cannot see why the route of the road designated therein may not readily be connected with the proposed route by the side of the canal. Four of the certificates designate portions of the line of the road, in the town of Cochecton, which may be west of the diverging point of the two routes, at the Collicoon creek; as it appears by the map that the town of Cochecton lies on both sides of that creek. And there is nothing in the description of the route in either of those certificates, or in the certificate of the location of a section in the town of Liberty, from which I can discover that any of the sections thus located are eastwardly of that diverging point. The sixth certificate is of the location of a section of the road commencing in the town of Mount Hope in the county of Orange, near the corner of a meadow occupied by a Mr. Loomis, and running northwesterly a few thousand feet. But whether this section is east of 'the diverging point of the two routes, near Port Jervis, between that point and the town of Goshen, or is to the westward of that point, does not appear from any thing contained in

the certificate of location. In addition to this, I have been furnished with an affidavit since the hearing of this motion, made by the chief engineer of the rail road company, in which he states that the locations in these certificates are not inconsistent with the adoption either of the northern or the southern route ; the five first being locations of sections of the road northwest of the Collicoon creek, and the sixth being the location of a section at the Deerpark gap of the Shawangunck mountain, through which each and every route of the road hitherto designated must necessarily pass, and including the diverging point of the two routes near Port Jervis. He also states that he does not know or believe that any certificates have been filed which conflict or are inconsistent with the adoption of the route along the canal. Whether this affidavit has been placed before me irregularly, or by the consent of both parties, I do not stop to inquire. For the allegation in the bill that the road has been located on the northern route, through the interior of the county of Sullivan, is denied in that part of the answer in which the same engineer swears that it has not been formally located on that route, so as to deprive the company of the power to designate a different route for that part of the road. And the certificates of location, unexplained, do not conflict with that denial in the answer.

It is not denied that the directors of the rail road company, in their report published in February last, represented the whole line of the road from the Collicoon creek easterly to Middletown, a distance of sixty-five miles, as being under contract. I presume, however, if that statement was technically true, that the contracts for the making of the road upon that route were merely nominal, and were entered into for the purpose of producing an effect upon the public mind in reference to the supposed progress of the road. But even if such contracts were entered into bona fide, and with the intention of having the road constructed upon that route under such contracts, it would not be sufficient to conclude the company, and to deprive it of the power to change the route, with the assent of the con-

tractors, if the directors had not actually designated and located the line of the road, or any part of it, upon that route, in the manner prescribed by the act of incorporation and the subsequent act amending the same.

The principles upon which this court interferes by injunction, in cases of this kind, are stated in the case of *The Mohawk Bridge Company* v. *The Utica and Schenectady Rail Road Company*, (6 *Paige's Rep.* 554.) And, for the reasons there stated, it is no objection to the location of this rail road upon the route of the canal, that it cannot be traversed by locomotives without frightening the horses on the towing path, so as to destroy the navigation of the canal. After the road is completed, if the use of locomotives shall be found to have that effect, an injunction may be applied for to restrain such use, and to compel the rail road company to draw their trains over this part of the road by horse power only. The real question to be taken into consideration at this time, therefore, is whether the mere construction of the rail road, upon the line designated in the surveys annexed to the answer of the defendants, will be so imminently dangerous to the canal and the navigation thereof as to render it improper for the defendants to attempt such construction.

The surveys of the defendants certainly show that it must be exceedingly difficult to build a rail road on that route without serious injury to the navigation of the canal. For it appears that the centre line of the rail way is very frequently within fifteen or twenty feet of the waters of the canal; and that at some points it is within ten or twelve feet. And the situation of the adjoining cliffs, for miles, is such that it is probably impossible to construct the road at a greater distance from the canal on the berme side. The difficulty of constructing that part of the road which is to be made between the canal and the river, without materially injuring the canal, and the towing path which lies on that side of it for the entire distance of the Delaware section, must be equally great. Upon the papers before me, however, I cannot say it is impossible, with proper care and

precaution, to construct and maintain the rail road on the line designated in the surveys without material injury to the rights and property of the complainants, or putting them in imminent hazard. The application for an injunction must therefore, for the present, be denied.

The value of the interests at stake, however, are so great, and the case is one of so much doubt, that if the complainants wish for an issue to settle the question whether the rail road can be thus constructed and maintained without material injury to the canal, or to the navigation thereof, or imminently endangering their rights in this respect, they may have such an issue, to be tried at the circuit in the county of Orange. And if such issue is found in favor of the complainants, an injunction may issue as prayed for in the bill, upon filing the postea and the clerk's certificate of the trial in the office of the assistant register, without any further application to this court. The question of costs upon this motion, and of the issue, if the complainants elect to have one in this stage of the suit, are to abide the further order of the court.