IN THE MATTER OF THE APPLICATION OF THE CITY OF BUFFALO FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE CERTAIN LANDS.

The legislature may interfere with property held by a corporation for one public use and apply it to another, and may delegate the power so to do to another corporation, but such delegation must be in express terms or must arise from necessary implication.

In determining whether a power to take lands, given in general terms, was meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior use and the extent to which it will be impaired or diminished by the taking for the subsequent use.

A legislative intent to subject lands devoted to a public use already in exercise to one which might thereafter arise, will not be implied from a gift of power, made in general terms, without having in view a then existing and particular need for the subsequent use; at least where both uses cannot stand together, and the latter, if exercised, must supersede the former.

Under the power given by the charter of the city of B. (chap. 519, Laws of 1870) to take lands for "canals, basins, slips" and other corporate purposes, the common council instituted proceedings for the purpose of acquiring a strip of land sixty feet wide and about two miles long through which to extend the M. and H. Street Canal. Portions of the lands sought to be taken for that purpose had already been acquired by various railroad corporations for the purposes of their roads. The line of the extension passed entirely through the yards of one of the corporations at a point where there were numerous tracks with switches and turnouts. It intersected other tracks, some of them the main tracks, others leading to yards, freight depots, etc., all in constant use and indispensably necessary for the business of the corporations. By the charter, the city acquires a fee to lands taken under its provisions. No provision was made in the proceedings reserving the right to the rail-

road corporations to bridge the canal or in any way to use the lands after the city had acquired title. *Held*, that no power to take such lands was given to the city by its charter, either expressly or by necessary implication.

(Argued December 19, 1876; decided January 16, 1877.)

THESE were appeals by the Lake Shore and Michigan Southern Railroad Company, the New York Central and Hudson River Railroad Company, the Erie Railway Company and the Buffalo, New York and Erie Railroad Company from orders of the General Term of the Superior Court of the city of Buffalo, affirming an order of Special Term appointing three commissioners to ascertain and report the compensation to be paid to the appellants, as the owners of lands sought to be taken for the purpose of extending the Main and Hamburgh Street Canal in said city.

Proceedings were instituted under the city charter, (chap. 519, Laws of 1870), to take, for the purpose of such extension, a strip of land sixty feet wide and about two miles long. The proposed extension passes through the lands of the appellants which had been acquired by them respectively for the purposes of their roads. It passes entirely through the yards of the Lake Shore and Michigan Southern Railway Company at a point where are located numerous tracks, turnouts and switches, all in constant use and all necessary for the convenient and successful operation of its road. The other railroad companies had numerous tracks across the lands sought to be taken, one of them the main freight track of the Erie Railway Company, the others leading to yards, freight depots, shops, etc. The affidavits showed that the injury to the roads would be irreparable, at least, unless the excavation for the canal should be bridged.

By the charter (title 8, § 18), it is provided that the fee of lands taken in proceedings under it should vest in the city. No provision was made in the order of Special Term reserving the right to the appellants to bridge the canal, or in any manner to use the lands when taken by the city, and nowhere

in the proceedings was there any reservation or recognition of any rights in them therein.

Further facts appear in the opinion.

The case, as reported on a former appeal, appears in 64 New York, 547.

*E. C. Sprague* for the appellants. The General Term erred in refusing to consider whether or not the common council had power to condemn the lands in question. (Laws 1870, chap. 519, tit. 8; *Han. F. Ins. Co.* v. *Tomlinson,* 58 N. Y., 215; *N. Y. C. and H. R. R. R. Co.* v. *Cunningham,* 13 Alb. L. J., 145; *In re R. and S. R. R. Co.* v. *Davis,* 43 N. Y., 137, 147.) The city had no power to take the lands of the railroad companies in the manner proposed. (*Heath* v. *Barmore,* 50 N. Y., 302; *Bklyn. Pk. Comrs.* v. *Armstrong,* 45 id., 234; *Inhabitants of Springfield* v. *Conn. R. R. Co.,* 4 Cush., 63; *M. and H. R. R. R. Co.* v. *Artcher,* 6 Paige, 83; *In re B. and A. R. R. Co.,* 53 N. Y., 574, 579; *Kyle* v. *Aub. R. R. Co.,* 2 Barb. Ch., 489, 497; *In re U. C. and S. V. R. R. Co.,* 56 Barb., 456; *Hill* v. *M. V. R. R. Co.,* 3 Seld., 152; *Alb. N. R. R. Co.* v. *Brownell,* 24 N. Y., 345; *Babcock* v. *City of Buffalo,* 56 id., 268; *Lodies' Case,* 2 Salk., 458; *King* v. *Pappinau,* 1 Str., 686; 2 Roll. Abr., 84; Washb. on Easements, 582, 583; *Rogers* v. *Barker,* 31 Barb., 451; *Clark* v. *Mayor of Syracuse,* 13 id., 32; *Boom* v. *City of Utica,* 2 id., 104; *Ely* v. *Suprs. Nia. Co.,* 36 N. Y., 300; *Mayor of Hudson* v. *Thorne,* 7 Paige, 261; *Colchester* v. *Brook,* 53 E. C. L. R., 339; *Denies* v. *Petley,* 69 id., 275; *De Bow* v. *People,* 1 Den., 9; 1 Dil. on Corp. [2d ed.], 173, §§ 55, 174, 175.) The action of the city is irregular for the reason that it does not appear that the entire land is to be taken for any public use for which the city charter authorizes lands to be taken. (2 Dil. on Mun. Corp. [2d ed.], 556, 557, §§ 457, 458; *Dunn* v. *Charleston,* Harper [S. C. L. R.], 189; *People* v. *Corp. of Albany,* 11 Wend., 539; *Embury* v. *Conner,* 3 N. Y., 511; *Baltimore* v. *Clunet,* 23 Md., 449.)

*Frank R. Perkins* for the respondent. The city had authority to take the lands for the purpose set forth in the petition. (2 Laws 1870, p. 1199, tit. 8, § 1; 2 Dil. on Corp., 566, §§ 460, 465, 566; *People* v. *Smith*, 21 N. Y., 597; *Peck* v. *Mallums*, 10 id., 509; 1 Redf. on R. R. Laws, 256; *Rogers* v. *Bradshaw*, 20 J. R., 735; Laws 1858, chap. 62, p. 86; *People* v. *Kerr*, 27 N. Y., 188; *Boston-water Power Co.* v. *B. and W. R. R. Co.*, 23 Pick., 360; *In re Fowler*, 53 N. Y., 60.)

Folger, J. This case has already been before us. It then appeared from the certificate of the learned judges at General Term, that that learned court had not passed upon the important questions of law and of fact presented. The judgment of the General Term was then put solely upon the ground, that the Special Term had no power to inquire into aught but the mere regularity of the municipal proceedings, and as to who should be commissioners. Therein, as we conceived, the General Term was in error. It was the sole error which the record then presented. It was all that this court could then properly review or determine. We could not say, but that when the General Term should exercise the power which it had, but under a mistaken notion did not then use, it would determine the facts and properly declare the law applicable to them. In the discharge of its whole duty, this court corrected the sole error then presented, and the case was sent back for a consideration by that learned court of the facts and the legal questions arising.

The case now comes up again. And we may now proceed upon the ground that the General Term has looked into the facts, and considered the questions of law involved. The opinion delivered is ample, explicit and quite satisfactory, in its declarations that the General Term has exercised its powers, and that the judgment of the Special Term has been reviewed upon the merits and the law. We may now look into the whole case.

The lands in question are held or occupied by the several railroad corporations, in different rights, for the public pur-

poses which are served by their special instrumentality. It is true, that at the same time, and in greater degree perhaps, the private interests of the corporators, or of those who manage the corporations, are also advanced. But however much the doctrine may have been doubted and questioned, at the first assertion of it, it is now firmly fixed, that railroad corporations may acquire and hold lands for a public purpose. It is a part of the law of eminent domain. The courts, who are set to declare the law and not to find fault with it, are bound so to pronounce it, and to conform their adjudications to it.

These lands thus held for a public purpose, the city of Buffalo seeks to take for another public use, which it is charged to promote. The legislature may interfere with property held by a corporation for one public use, and apply it to another; and without compensation, where no private interests are involved or invaded. (*The People* v. *Kerr*, 27 N. Y., 188.) The legislature may delegate this power to public officers or to corporate bodies municipal or other. It is a rule, however, that such delegation of power, must be in express terms, or must arise from a necessary implication. (*In re Boston and Albany R. R. Co.*, 53 N. Y., 574; *Boston Water-power Co.* v. *B. and W. R. R. Co.*, 23 Pick. 360.) The city of Buffalo must produce statutory authority, which in express terms gives it power to acquire these lands; or statutory authority from which the implication that it may, is necessary. The city produces the charter given to it by the legislature, by which, there is granted to it, "power to take lands for * * * canals, basins, slips, and other public waters, and for any other corporate purpose or object" (Laws of 1870, 2 vol., p. 1199, title 8, § 1); and to "enlarge and alter" the same (id., p. 1203, title 9, §§ 1, 6); and by which "unwholesome waters * * * and matter * * * may be abated by * * * draining, or in any other way it shall deem expedient. * * *" (Id., p. 1210, § 4.) The charter does not give power in express terms, to take these lands, or any other held for public use. Is there, from the language in which these powers are given, or from any of the circum-

stances attending the gift, or from any of the necessities of the city, existing, or actually foreseen when it was given; a necessary, that is, an unavoidable, implication, that the legislature gave or meant to give such power? We do not think, that it can be contended that there is. If the power exists, it must be found in the nature of the corporate power and objects of the city, and as a necessary implication from the conferment of them. It is to be based, if at all, upon this proposition, and no other; that the legislature has created this municipality to further certain objects of general concern, and has given to it general powers to be used to that end; and that as a consequence, the legislature must be held, to have intended to confer all power, at any time needful thereto; that from the general power to take lands to further the public convenience and preserve the public health, results the power, whenever it is necessary so to do, to take lands held and used for other and prior public purposes. It is here, that the Special Term found the right of the city, and the opinion of the learned judge who presided there, ably sets forth the argument. Doubtless, it is to be held, that every grant of power is intended to be efficacious and beneficial, and to accomplish its declared object; and that it carries with it such incidental powers as are requisite to its exercise. If then, the exercise of the power granted draws after it a necessary consequence, the law contemplates and sanctions that consequence. But every rule of law, is to be applied in view of all other rules of law related to it, and no one may always absolutely domineer over others. Now, as before said, there are no words in the charter of the city, which give it the power in specific terms, to take these lands, nor any other lands already held for a public use. Nor does there appear on the face of the charter, a necessary implication that the power so to do was meant to be given. To hold that it did, would be to hold that every gift of power to take lands, though made in the most general terms, carried with it the power to take lands already held for public purposes. All corporate bodies to whom that general power is

lawfully given are organized to promote some purpose, in the judgment of the legislature worthy of attainment and conducive to the public good. If we were to hold that such a gift, in all cases, carried with it the further power to do all things necessary to accomplish the result sought for, we should annul the rule that the power to take property already devoted to a public. use must be given in express terms, or must be necessarily implied. This may not be done. (53 N. Y., *supra.*) An implication, is an inference of something, not directly declared, but arising from what is admitted or expressed. Thus, when a statute looking beyond the question of revenue, inflicts a penalty for doing an act, though that act be not in terms prohibited, yet it is unlawful, for the penalty implies a prohibition. (*Griffith* v. *Wells,* 3 Denio, 226.) And the principle is, that as the law will not punish an act which it is lawful to do, when it does punish it, the act must of necessary implication be unlawful. So, if the legislature should give power by special charter to a railroad corporation, to build a road from Albany to Utica, along the banks of the Mohawk, and to pass through Little Falls, with power conferred in general terms to take and hold all lands needful therefor, we should of necessity imply, that power was given to take so much of a public highway already laid out in the narrow space through which that river runs at the last-named place, as was needful to construct the railway track. Here the implication would arise, from the application of the special charter to the subject-matter of it, as by reasonable intendment, the railway track could not be laid on any other line. But if a railroad corporation should organize under the general railroad acts, in general terms to build a railway from Albany to Utica, would there be a necessary implication from the general gift of power in those acts to take lands, that such corporation could appropriate the town highway, or State canal, or track of the New York Central Railroad Company, already existing in the narrow rocky ravine at Little Falls? And yet, it might be made quite plain by testimony, that a railroad could not be built

through that gorge, without taking the place there of one of those existing public works. And the reason for the two different results is, that in the first instance, it might be presumed, from the time, and special nature and object of the enactment, that the legislative attention was especially called to the state of things existing on the banks of the Mohawk; and that the power to lay a railway track there, was given in full consideration of what would be the result of so laying one, and of what would need to be done therefor, and that as a probable consequence, some public use already there, would have to yield to the new use; but in the second instance, it is hardly necessary to say, that such a presumption would have not the slightest ground. So, in the case in hand, had the legislature by especial act lately given power to the city of Buffalo to extend the Main and Hamburgh Street canal, between the *termini* named in the resolution of the common council, and to take all property upon the designated route needful for the work; we should be bound to presume, that the legislature meant that any prior public use of any of such property must become secondary to the use thus now declared, just as if the law-making power had stood upon the ground and took into physical vision the exact situation of every thing comprehended in the subject-matter of the enactment. But would it not be extravagant to infer from a clause in a general enactment conferring various municipal powers, and comprehending in its forecast, no special occasion or place for the exercise of them, that the legislative eye looked upon every possible future emergency, and bound up in the gift of power expressed in most general terms, every possible future result? It is fairly to be argued, that though there is no term, no limitation in the charter upon the power of the city, still if the legislature had already appropriated the lands to another important public use, it is not to be presumed that it was meant to extend the power so as injuriously to affect that. For see, how in the general railroad acts, though power is given to take lands for the public purpose of a railroad, yet it was deemed

by the legislature necessary to give, in express terms, the power to cross a highway, and the power to interfere with the line of a highway so as to change it. This, we are stating, is especially so, if the construction contended for would wholly or in a great degree, defeat that other public use. Hence, a limitation may be engrafted upon the general power given by the charter of the city.

In determining whether a power generally given, is meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference which may be compensated for by damages paid; if the latter use, when exercised, must supersede the former; it is not to be implied from a general power given, without having in view a then existing and particular need therefor, that the legislature meant to subject lands devoted to a public use already in exercise, to one which might thereafter arise. A legislative intent that there should be such an effect will not be inferred from a gift of power made in general terms. To defeat the attainment of an important public purpose to which lands have already been subjected, the legislative intent must unequivocally appear. If an implication is to be relied upon, it must appear from the face of the enactment, or from the application of it to the particular subject-matter of it, so that by reasonable intendment, some especial object sought to be attained by the exercise of the power granted could not be reached in any other place or manner.

With these rules to guide, we may now look into the facts of the case. It is hardly necessary, though not perhaps useless, to say that they are not novel or original, but are gathered from the considerations of former adjudications. (See 23 Pick, *supra ; Springfield* v. *Conn. Railroad Co.*, 4 Cush., 71; *Cen-*

*tral Bridge* v. *Lowell*, 4 Gray, 474; 53 N. Y., *supra;*
*Mohawk & H. Railroad Co.* v. *Artcher*, 6 Paige, 83; *H. and*
*D. Canal Co.* v. *N. Y. and E. R. R. Co*, 9 Paige, 323; *Boston and Lowell Railroad Co.* v. *Salem and Lowell Railroad Co.*, 2 Gray, 1.)

It is apparent from the affidavits that if the city is permitted to carry out its project, a very serious interference will be made with use by the railway corporations of their premises. The city proposes to excavate a canal sixty feet in width, entirely through the yards of one of them, at a place where there are numerous tracks, turnouts and switches. The present grade of these tracks, etc., is but a few feet above the natural level of the canal. It is beyond dispute, that the almost constant use of these tracks, etc., is absolutely necessary for the business of these corporations, which is but another form of saying, for the purposes of the public. It is quite apparent, that to continue the use of them, if the proposed canal is excavated, bridges must be built over it, of large dimension and at considerable expense, and at an elevation higher than the present grade of the track. It would not be impossible as matter of fact, to put up such bridges and to use them, nor are we disposed to lay much stress upon the expense of erecting them. The great question is, whether the railroad corporation could lawfully throw them across the canal, if the city should be unwilling and should refuse the permission. It is to be observed that by the charter, when the city has lawfully exercised the power to take lands, and has completed the proceedings therefor, it acquires a title in fee. (2 Laws of 1870, chap. 520, p. 1202, § 18.) There is not pointed out in the charter, nor in the resolutions of the common council, nor in the judgment of the courts below, any thing which secures or offers to these corporations the right or privilege to throw bridges over the canal. Indeed, the learned counsel for the city in argument before us, said that a right so to do, could not be enforced, and the dependence for a license so to do, must hang upon the good-will and grace of the municipality. This is far

from a legal certainty. So that, as the case stands before us, the city seeks to acquire the right to sever by a space of sixty feet, the tracks in the use of four railroad companies, which form highly important links in State and Inter-state railway traffic, and potentially to keep that space open and impassable by railway vehicles. It is manifest, that this would be, not a tolerable interference with an existing public use, which may be compensated for in damages; but an entire superseding of it, by another public use. Both uses cannot stand together. The highly important use to which the land is already appropriated would be defeated. We may not presume, that the legislature, by the general terms in which it gave power to the city to take lands, with no especial reference to this particular place or occasion, meant to produce such an effect. There is not express power, nor power by necessary implication, for the city to work such result.

It is suggested, that the lands once acquired by the city and put to the public use of a canal, could be in turn retaken by these railway corporations in the exercise of the sovereign power delegated to them. And if we adjudge that the city may now take them, there is no reason evident, why that might not be. But then the city could again retake, and so the pursuit of cross-purposes, go on *ad infinitum.*

It is better reason; to take the facts as they stand, and the legal rights of the parties as they exist; as the facts warrant the conclusion, that the excavation of the canal will sever the track of the railways and put an end to the use of them; and, as there is no legal right, the enforcement of which will permanently restore that use; to say that there is no legislative authority to the city, expressly given, or necessarily to be implied to work such result.

All concur.

Orders of General and Special Terms reversed and application denied.