IN THE MATTER OF THE NEW YORK AND BRIGHTON BEACH RAILWAY COMPANY FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE, ETC.

*Eminent domain — when a railroad company cannot acquire title to lands already taken for public use — Chap. 583 of 1874 and chap. 489 of 1875 — land acquired under, cannot be taken by a railroad company.*

Chapter 583 of 1874, as amended by chapter 489 of 1875, authorized the park commissioners of the city of Brooklyn to lay out and improve a public highway through the town of Gravesend, and on and across Coney Island to the Atlantic Ocean, and to lay out, open and improve a concourse or shore road, extending along the beach, not to exceed 3,000 feet, and in depth not more than 1,000 feet, and provided that when laid out and improved the said highway and concourse should be under the exclusive charge and management of the park commissioners, and the cost of their maintenance should be a charge upon the city of Brooklyn.

In pursuance of these acts the park commissioners acquired title to the neces-
sary lands, and laid out and improved the said highway and concourse,
grading the latter, planting trees therein, and otherwise embellishing it.
The petitioner, a railroad company, sought to acquire title to a consider-
able portion of the concourse lands to be used for the purposes of a depot,
engine house, etc., and accordingly applied for the appointment of commis-
sioners to appraise the damages to be paid therefor.

On appeal from an order appointing commissioners for that purpose, *held,* that
the uses to which the petitioner sought to apply the lands were entirely incon-
sistent with the uses for which the lands had been acquired, and to which
they were then applied.

That the general railroad act did not authorize the petitioner to acquire title to
lands which had already been taken for, and applied to a public use under
an express act of the Legislature.

That while the Legislature has power to supplant one public use by another, yet
that such power will not be implied from a general authority to acquire land,
but must be conferred in express terms.

APPEAL from an order made at Special Term appointing com-
missioners to appraise damages, in an application of the New York
and Brighton Beach Railway Company to acquire title to certain
lands.

*John H. Knaebel* for the Brooklyn Park Commissioners,
appellants.

*John Sidney Davenport,* for the respondent.

GILBERT, J. .

This is an appeal from an order of the Special Term appoint-
ing commissioners, on the application of the New York and
Brighton Beach Railway Company, in a proceeding under the
general railroad act, to acquire certain lands for railroad pur-
poses.

The petitioner seeks to appropriate in fee and devote to its
exclusive use for the purposes of a depot, engine-house, etc., a
considerable part of the concourse lands which were acquired
for public use as a seaside concourse or park under special statutes
(Laws 1874, chap. 583; Laws 1875, chap. 489), and which are now
entrusted to the care, management and control of the park commis-
sioners of Brooklyn.   The park commissioners object to the pro-
ceeding, on the ground that the petitioner is not entitled to sup-

plant with railroad uses the public uses for which the lands in question were specially acquired and are now held under the statutes above cited.

By section 1 of chapter 583 of the Laws of 1874, as amended by chapter 489 of the Laws of 1875, the Brooklyn park commissioners were directed to lay out and improve a public highway or avenue (now called the Ocean Parkway) through the town of Gravesend, and on and across Coney Island to the Atlantic Ocean; and they were further directed as follows, viz.: to "lay out and open and improve such concourse or shore road at the southerly terminus of said highway, hereby extended as *in their judgment*, shall be wise and proper, not exceeding 3,000 feet in length on each side along the beach, and not exceeding 1,000 feet in width, exclusive of such accretions and additions which may be caused by the action of the elements, or otherwise, on the southerly side thereof, which accretions, if any, shall attach thereto and be under the control and care of the Brooklyn park commissioners as the said concourse or shore road shall or may be; and for this purpose they may enter upon any lands that may be necessary, and cause a proper survey and map of the said avenue as well as of the district of assessment therefor to be made." By section 3 of the said act of 1874, the commissioners are directed "to grade and otherwise improve said concourse," etc. By section 7 of the same act the commissioners are authorized "to improve the said avenue and one hundred feet road, and said concourse, lateral branch, or shore road at the ocean beach, according to a plan to be devised or adopted by them; and for that purpose they may cause the same to be graded, paved, curbed, guttered and bridged, and shade trees planted thereon, and may lay out and construct such carriageways, side-walks, and areas, with such terraces, drives or concourses on the ocean beach as they may deem expedient, and such improvements may be made in sections, and from time to time, if they shall so elect." By section 11 of the same act it is declared as follows: "After the said avenue shall have been opened the said avenue, and the concourse lateral branch or shore road, at the ocean beach, shall be under the exclusive charge and management of the said park commissioners, and they shall make and enforce

rules and regulations for the proper use thereof. And after the said avenue and shore road shall have been improved, as hereinbefore directed, its subsequent maintenance shall be a charge upon the city of Brooklyn, and such amounts as the said park commissioners shall, from time to time, by resolution, determine to be necessary for the purpose, shall be annually raised by the board of supervisors of the county of Kings, and collected in the taxes of the then current year, and paid over to the said park commissioners."

Pursuant to these statutes the Brooklyn park commissioners, by a resolution formally passed at a meeting of the board, laid out the concourse, and declared its bounds to be, on the south, the high-water mark of the Atlantic Ocean ; on the east, a line drawn parallel to and distant 1,500 feet easterly from the center line of the Ocean Parkway, as theretofore laid out ; on the north, a line parallel to and distant northerly 1,000 feet from high-water mark of the Atlantic Ocean ; and on the west, a line drawn parallel to and distant 1,250 feet westerly from the center line of Ocean Parkway.

The lands thus required for the concourse were surveyed, mapped and regularly condemned by due process of law, and thereafter the park commissioners took possession thereof, and proceeded to improve the same as required by law — grading the land, constructing a tarred drive, with a water-break, planting trees, erecting shelters, introducing water, providing gas-lamps, etc.

The petitioner seeks in this proceeding to acquire in fee a considerable part of the concourse, and to devote the same to the petitioner's exclusive use for the erection of an engine-house, depot, etc. It is evident that such railway uses are utterly inconsistent with the concourse uses, for which the lands in question were acquired. It also appears that, in view of the present public use of the tarred road and the uses for which the rest of the concourse is designed, the proximity of the petitioner's cars and engines would be a public nuisance and a source of annoyance, and even danger, to the throng of equestrians and other persons using horses on the drive.

While the Legislature has power, by express statute, to supplant one public use by another, yet the delegation of such power

must be made in express terms. It cannot be implied from a general power to acquire lands. The language of the general railroad act, conferring power to acquire lands for the use of a railroad, does not authorize a railroad corporation to subvert an appropriation of property to other public uses which are inconsistent with the use thereof for a railroad. (*In re Buffalo*, 68 N. Y., 171.) To take property already appropriated to another public use, the act of the Legislature must show the intent so to do by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting the intent. The Legislature is not presumed to have abandoned the former use and turned over the property to the later use, without clear and unmistakable expression of that intention. (Mills Em. Dom., chap. 5, § 45, and cases cited.)

In the case of *The Rochester Water Commissioners* (66 N. Y., 413), Judge ALLEN said: "A corporation, either private or municipal, cannot, under a general power to take lands for a public use, take from another corporation, having the like power, lands or property held by it for a public purpose pursuant to its charter." "Lands held upon a special trust for a public use cannot be appropriated to another public use without special authority from the Legislature." *In re Boston and Albany R. R. Co.*, (53 N. Y., 574), the court held that prior public uses for park purposes were sacred from the invasion of a railroad company, proceeding under the general act, and in the case *In re Buffalo* (68 N. Y., 167), it was held that a railroad could not be interfered with under a general power to take lands for a canal. In *Rensselaer and Saratoga R. R. Co.* v. *Davis* (43 N. Y., 146), it is said by Judge ANDREWS: "Statutes authorizing condemnation are not to be extended by inference or implication." * * * It is a prerogative power necessary to the government and the welfare of its citizens. At the same time it should not be allowed to be exerted by or in behalf of individuals or corporations, except under the express sanction and clear authority of law."

The petitioners claim that part of the concourse lands has been abandoned, but we think that such a claim is not supported by the evidence. No right to abandon exists in the park commissioners. They are trustees of express public trusts. The land

was acquired for the execution of, and is now devoted to, the purposes of such trusts. It cannot, without legislative authority, be diverted from the purposes for which it was acquired. (*The Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y., 234; *In re B. and A. R. R. Co.*, 53 id., 576.)

The testimony as to the supposed "Park street," so far from showing any intention to abandon any lands, or any purposes in respect to them, shows on the part of the persons concerned in the negotiations for the opening of the street, a desire to develop and perfect the original plan by straightening the northerly boundary, and to that end acquiring additional lands largely exceeding in quantity the small part, the separation of which from the concourse proper, by dedication to street uses, was discussed between the parties to the conference. But the subject of Park street never proceeded beyond mere informal discussion. Nothing binding on any one was accomplished.

This order, so far as it affects the concourse, must be reversed, with costs and disbursements.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Order so far as it affects the concourse reversed, with costs and disbursements.