In the MATTER OF THE PETITION OF THE BOSTON AND ALBANY RAILROAD COMPANY FOR THE APPOINTMENT OF COMMISSIONERS, ETC., TO TAKE LAND IN THE VILLAGE OF GREENBUSH.

The power given by the general railroad act to railroad corporations to acquire title to "any real estate required for the purposes of the incorporation" (§ 13, chap. 140, Laws of 1850) does not extend to property already dedicated to and held for another public use by authority of law, save in the cases where it is expressly given by said act.

Statement of case.

Such a power must be conferred by express terms or necessary implication, and the implication does not arise if the powers expressly conferred can by reasonable intendment be exercised with such an appropriation.

Accordingly, *held*, that said act did not give authority to take lands held by a municipal corporation in trust for the use of the public as a public park or common.

The provisions of section 26 of said act, authorizing the taking of lands when the title is vested in any trustee not authorized to sell, etc., has reference only to private'and individual, not to public trusts.

*Anderson* v. *R., L. and N. F. R. R. Co.* (9 How., 553), limited.

(Argued September 23, 1873; decided November 11, 1873.)

APPEAL by the village of Greenbush from an order of General Term of the Supreme Court in the third judicial department, affirming an order of Special Term taking a parcel of land in said village, known as " The Park," for the use of the Boston and Albany Railroad Company. The trustees of said village were made parties to the proceedings. The taking was contested principally upon the ground that the land in question had already been appropriated and taken for public use, and hence could not be condemned under the railroad acts. It appeared upon the hearing that said lands had been given to the village for the purpose of a public park, and that it had been opened and dedicated to the public for about twenty years. It was laid out on the map of the village and described as " The Park."

*Amasa J. Parker* for the village of Greenbush, appellant. There is no right to take the park for railroad purposes. ( *West River Bridge Co.* v. *Dix*, 6 How. U. S., 534; *Darlington* v. *Mayor*, 31 N. Y., 193; *Bailey* v. *Mayor*, 3 Hill, 531–539; 11 Wend., 151.) The Constitution only authorizes the taking of private property for public use. (*In re Albany St.*, 11 Wend., 149, 151; *Embury* v. *Conner*, 3 Comst., 511, 517; *Bloodgood* v. *Mohawk Co.*, 18 Wend., 59; 4 Hill, 140; 2 Kent's Com., 340, note.) It is for the court to decide the necessity for taking the land. (*R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 137; 12 Abb. [N. S.], 318.)

*Geo. W. Miller* for the B. and A. R. R. Co., respondent. The fact that the park had already been dedicated to public use would not prevent its being condemned under the railroad acts. (*U. S.* v. *R. R. Bridge*, Law Reg. [O. S., No. 3], 603, 617; *People* v. *Law*, 34 Barb., 494; *People* v. *Kerr*, 27 N. Y., 188; Potter's Dwarris on Stats., 377, 384, 387, and cases cited.)

ALLEN, J. The only fact material upon this appeal is that the lands, sought to be taken for the purposes of the railroad corporation, were donated to the village of Greenbush by the former proprietors as and for a public park, and dedicated to the use of the public as such. The evidence bearing upon the necessities of the corporation for more lands in the vicinity of these for its purposes, and the comparative fitness of those proposed to be taken and other lands near them, can hardly be considered by us. To a large extent the company must be left, under the delegation of power to it by the State, to determine the extent of its wants, and fix upon the particular location of the lands to be taken, subject to this qualification, that the purposes for which the lands are proposed to be taken must be those for which the company was incorporated, and strictly within its chartered rights. A reasonable necessity must be shown, or, in other words, there must not be an evident and apparent absence of all occasion or necessity for the property for the legitimate purposes of the corporation. (*In re N. Y. C. R. R. Co.* v. *Kip*, 46 N. Y., 553.)

The question here grows out of the character of the lands proposed to be taken, and the title by and purposes for which they are held by the village of Greenbush. They are not the property of individual citizens, neither are they held and owned by the village of Greenbush as its absolute property, but upon a special trust and for public use. The village could not dispose of them or divert them from the purpose to which they were dedicated. (*Anderson* v. *Rochester, etc., R. Co.*, 9 How. Pr. R., 553.)

That the legislature has control of and power over all pro-

perty held by municipal corporations for public use, whether for the use of the inhabitants of the particular locality or of all the people of the State, except as such power may be affected by the terms and conditions of the grant to the municipality, is unquestioned. (*People* v. *Kerr*, 27 N. Y. 188.)

Questions have arisen, in some instances, whether the construction of a railroad upon the surface of a public highway or street was an appropriation of the land to another and different use from that for which it had been taken and used, the claim being that the two uses were of the same general character, the diversity being in the manner and not in the character of the use, and that the construction of the railroad was not, therefore, a new or different appropriation of the property. That question is not in this case. It is not denied that a taking of this property by the applicant, and a user of it for the purposes of the corporation, is utterly inconsistent with its use as a public park, and that the village of Greenbush, as the trustees, and the people as the *cestuis que trust*, will be absolutely deprived of all benefit in and use of the property, and the possession of the railroad corporation will be exclusive as of property taken under the act from private individuals. (Laws of 1850 ch. 140, § 17.)

The sole question, then, is whether the legislature has conferred upon the applicant the power to enter upon and take possession of property already held and dedicated by authority of law to one public use, for another and entirely different use, also declared to be public. The authority must be sought in the statutes by which all the powers which railroad corporations may exercise over property, without the consent of the owners, are conferred, and if not found, then it does not exist. It must be expressly conferred, that is, in direct terms or by necessary implication; and the implication does not arise, if the powers expressly conferred can, by reasonable intendment, be exercised without the appropriation of property already actually held and

used for another public use. (*Inhabitants of Springfield* v. *Connecticut R. R. Co.*, 4 Cush., 63.)

The power is general to acquire title to "any real estate required for the purposes of the incorporation." (Act of 1850 [*supra*], § 13.) But this does not, *prima facie* or presumptively, include property already in public use under the sanction of the law. There is no implied supremacy of this particular public use over every other known to the law, so as to permit a railroad corporation, without the further and direct sanction and permission of the legislature, to override and subvert every appropriation of property to other public uses. Section 14 of the act prescribes the procedure for the appropriation, and directs that the petition shall, among other things, state that the company has not been able to acquire title thereto, and the reason of such inability; and the inability recognized in section 13, is that of being unable to agree for the purchase. It is said, and I think with entire accuracy, in *Anderson* v. *Rochester, etc., R. R. Co.* (*supra*), although not necessary to the decision, that the right of way over a public park or square, set apart and held for public use, cannot be acquired by a railroad corporation under these provisions. But the same distinguished judge intimates that title or a right of way may be acquired over property thus held by a municipal corporation upon such a trust, under section 26 of the same act, authorizing and regulating proceedings for taking lands when the title is vested in any trustee, not authorized to sell, or in any infant, idiot, lunatic, etc. The plaintiff was defeated in that action for want of title to sue, and hence the intimation was *obiter*, although entitled to great respect by reason of the character of the judge from whom it emanated. But I am not able to concur in his views. The trusts meant by the provision were private and individual trusts, and not public trusts or property held by public corporations for public use. But one class of trusts was intended, and that was the class of private trusts within the same category and the same general rules as are applicable to individual and private property held by

those incompetent to sell the same.    It would be an unwarrantable extension of the provision by implication to include within it all public as well as private and individual trusts. Other legislative provisions show that property held by public officers or public bodies for public use was not intended to be brought within the provision.   Section twenty-four makes provision for the crossing of another railroad, or highway, turnpike and plank-road and section twenty-eight, subdivision five, permits railroads to be constructed across, along, or upon any street, highway, plank-road or turnpike, but upon condition that the same be restored to its former state, or to such state as not unnecessarily to impair its usefulness, and an order of the Superior Court upon cause shown is necessary to the exercise of this power.

These provisions confer all the authority that exists in railroad corporations to enter upon and take possession of property held for public use.   Another section (§ 25) authorizes the taking lands owned by the State or any county or town, but this has relation to property of which the State or a county or a town is the proprietor, and not that held in trust for the use of the public.   Every power granted in terms can be exercised, and all the purposes for which the corporation was created can be answered, without the exercise of this power to take property held by a public corporation for the use of the public as a park or common, and hence the power does not result by necessary implication, and, not, being granted in express terms, does not exist.   *People* v. *Law* (34 Barb., 494) and *Same* v. *Kerr* (27 N. Y., 188) were under statutes expressly authorizing the use of the public streets for a railroad track (chaps. 411 and 513 of the Laws of 1860), and the only question was as to the relation of the city of New York to the streets, and the nature and extent of private or individual interests in the streets of that city.   *Armington* v. *Barnet* (15 Vt., 745) and *West River Bridge Co.* v. *Dix* (16 id., 446 ; S. C., 6 How. U. S. R., 507) arose under a statute of Vermont expressly permitting, when in the judgment of the Supreme Court or County Court the public good required

it, the taking of any real estate, easement or franchise of any turnpike or other corporation for the construction of a new highway. The cases merely involved the question of legislative power and the construction of the statute. *Freeholders of Monmouth Co.* v. *Red Bank and Halmdel Turnpike Co.* (N. J. Eq. R., 91) is foreign to this case, merely deciding that when the charter of a turnpike company authorized its construction on a route including a public county bridge, and required the payment of damages to the owners of lands over which the road should pass, that the compensation clause applied to the bridge as included in the term *lands*, of which the county was the owner. *Indiana Central Railroad Co.* v. *State of Indiana* (3 Ind. R., 421) merely decided that the construction of a railroad over a part of a tract of eighty acres of land purchased by the State for the purposes of an institution for the deaf and dumb, and on another part of which the buildings for the institution had been erected, would not so materially interfere with the purposes of the institution as to justify the enjoining the company from crossing the lands with its railway. All the cases, it will be seen, are entirely consistent with the conclusion to which we have come, that the State has not delegated to railroad corporations the right to take property held in trust for public use, except to the limited extent specified in the statute, and that their right to take lands held in trust to be used as a public park or common is not within the statutory grant.

This leads to a reversal of the order and a denial of the application.

All concur.

Order reversed, and ordered accordingly.