# BUFFALO SUPERIOR COURT.

## In the Matter of the Extension of the Main and Hamburgh Street Canal.

*Power of the city of Buffalo, under its charter, to take lands of railroad corporations for a canal.*

The city of Buffalo is empowered by its charter (*section* 1, *tit.* 8) " to take lands for public buildings, for parks, public grounds, squares, streets, alleys, fountains, canals, basins, slips and other public waters; and for any other corporate purpose or object." This power as to the lands to be taken is without limitation. It is, in terms, sufficiently comprehensive to embrace any and all lands within the city.

It is well settled that the legislature, in the exercise of the right of eminent domain, may appropriate or authorize the appropriation, upon payment of a full equivalent, of any lands, property or rights, although they may have been already taken and are held for another public use of a different nature.

The charter of the city of Buffalo does not grant the power, in express terms, to take the lands of a railroad company or any other property already appropriated to public use.

But in laying out, constructing or improving a street, canal or sewer, or laying down gas or water pipes, or for any other corporate purpose, the city finds it necessary to enter upon and take some part of the land or property of a railroad company, it is by necessary implication clothed with the requisite power to accomplish the purpose.

Where, therefore, the city of Buffalo has determined, in the manner provided by law (the appointment of commissioners), to take the lands necessary to extend the Main and Hamburgh Street canal from its present easterly terminus to the Buffalo river, a distance of nearly two miles, and which will intersect the tracks of three different railroad companies, but in such a manner as not essentially to impair or diminish the usefulness or convenience of their tracks, or injure the business of the companies as carried on over their present lines of traffic, it takes the lands which it acquires by such proceedings for the public use, and the fee with which it becomes vested is simply that of a trustee holding for such

Matter of Main and Hamburgh Street Canal.

use. The taking creates no private or exclusive right or property in the city corporation as against the public.

*At Special Term, April,* 1875.

*F. R. Perkins,* city attorney, for city of Buffalo.

*James M. Willett,* for Lake Shore and Michigan Southern Railroad Company and the New York Central and Hudson River Railroad Company.

*E. C. Sprague,* for Erie Railway Company.

*O. O. Cottle,* for Fannie P. Cottle.

*L. Le Clear,* for Wm. Wasson, 2d.

JAMES M. SMITH, *J.* — The city of Buffalo has determined in the manner provided by law, to take the lands necessary to extend the Main and Hamburgh Street canal, from its present easterly terminus to the Buffalo river, a distance of nearly two miles. The proposed extension is to be sixty feet in width, and will intersect the tracks of three different railroad companies. The city attorney, upon due proof that the requisite preliminary steps prescribed by law have been taken by the common council and city officers, now moves for the appointment of commissioners to ascertain the compensation to be made for the lands to be taken in this proceeding. The several railroad companies referred to, appear by their counsel against the motion, and urge an objection, which, if well founded, may be fatal to the whole proceeding ; as it rests upon a denial of the right of the city to take. for the proposed canal the lands of the railroad companies through which, if the canal is to be constructed, it must necessarily pass. None of the companies will be so seriously affected by this proceeding as the Lake Shore and Michigan Southern Railway Company, and though the same legal principles govern the rights of them all, yet as the facts in relation to

that company present the objection urged by all of them in the strongest light, I shall consider the case with special reference to those facts.

It is shown by that company, that its lands affected by this proceeding were taken pursuant to the provisions of the statute known as the general railroad act, and in the exercise of the right of eminent domain, for the purpose of constructing and operating its railroad; that it has constructed said road, and has laid down seven different tracks upon that part of its lands through which the proposed canal will pass for a distance of 200 feet; and that these tracks are in continual use for a vast and constantly·increasing passenger and freight traffic, and are indispensably necessary for that purpose. The railroad company has also read affidavits of engineers and others skilled in the construction and operation of railroads, stating that in their opinion it will be impracticable to bridge the proposed canal, at the place where it will intersect the seven tracks of the railroad, at a sufficient height above the canal to pass·boats of the usual size, without raising the grade of the railroad tracks so as to destroy their usefulness; that the company would no longer be able to transact its business thereon, and would be deprived of the use of extensive yards, freight depots, repair shops, engine houses, turn-tables, and other large and expensive structures, which were erected for use in connection with these tracks, and the company would thus suffer irreparable injury and be compelled to seek and establish other and new routes for its traffic in and through this city.

But, on the other hand, the city attorney has submitted affidavits made by other engineers and persons of like skill and experience, and maps and profiles of the proposed canal, the railroad tracks which it intersects, and the adjacent premises, which show to my satisfaction, that the grave apprehensions expressed in the opinions referred to, are not well founded; and that it will be quite practicable, (though not without incurring a very large expense) to bridge the canal

in such a manner as to carry the railroad tracks over it at the height requisite for the purposes of navigation, and yet not essentially impair or diminish the usefulness or convenience of the railroad tracks, or interrupt or injure the business of the company as carried on over its present lines of traffic.

With this view of the facts in the case, I come now to consider the legal principles involved.

The city of Buffalo is empowered by section 1 of title 8 of its charter "to take lands for public buildings, for parks, public grounds, squares, streets, alleys, fountains, canals, basins, slips, and other public waters; and for any other corporate purpose or object." This power, as to the lands to be taken, is without limitation. It is in terms sufficiently comprehensive to embrace any and all lands within the city. And it is well settled that the legislature, in the exercise of the right of eminent domain, may appropriate or authorize the appropriation, upon payment of a full equivalent, of any lands, property or rights, although they may have been already taken and are held for another public use, of a different nature (*West River Bridge Co.* agt. *Dix*, 6 *How.*, 507; *Freeholders of Monmouth Co.* agt. *Red Bank & H. Turnpike Co.*, 18 *N. J. Eq. Rep.*, 91; *Indiana Central R. R. Co.* agt. *State of Indiana*, 3 *Ind. Rep.*, 421; *The Boston Water Power Co.* agt. *The Boston & W. R. R. Co.*, 23 *Pick.*, 360; *People* agt. *Kerr*, 27 *N. Y.*, 188; *Matter of Boston & Albany R. R. Co.*, 53 *N. Y.*, 574).

But the principle is also established, that the power to enter upon and take property already taken and held for one public use, for another and different public use, must be conferred either in express terms or by necessary implication; and that this implication does not arise, if the powers expressly conferred can by reasonable intendment be exercised without the appropriation of property already actually held and used for another public use (*Inhabitants of Springfield* agt. *Connecticut R. R. Co.*, 4 *Cush.*, 63; *Matter of Boston & Albany R. R. Co.*, *supra*.)

The construction and operation of a railroad is for public purposes, and it is therefore held that real estate taken for its use is taken for the public use. And the statute under which the lands in question now held by the railroads were acquired, expressly enacts that "all real estate acquired by any company under and pursuant to the provisions of this act, for the purposes of its incorporation, shall be deemed to be acquired for public use" (*Chap.* 140 *of Laws of* 1850, *sec.* 18). The charter of the city of Buffalo does not grant the power in express terms to take the lands of the railroad company, or any other property already appropriated to public use. Can the power then be implied, as reasonably intended to be conferred by the charter in the general grant of power to take lands for corporate purposes?

A principal purpose in the organization of municipal corporations, is to provide for the construction, maintenance and preservation of those institutions, and those works of local improvement, which subserve the wants, necessities, comfort, or convenience of the citizens, not only as individuals, but as members of a civilized community. Hence the wide range of powers conferred for public purposes, for the preservation of the public health, for the education of youth, for the relief of the poor, for the protection of life and property from the elements, and for the promotion and protection of trade and commerce. In the due execution of these powers, private rights and interests must often yield to the demands of public necessity. And a large discretion is, and, in the nature of things, must be, confided to the municipal government, in respect to the occasion, the time, and the manner of executing its powers. And the exercise of that discretion can only be regulated or restrained by positive enactment, or the enforcement of those fundamental principles upon which the rights of the citizen and the safety of public interests repose. And in all cases where questions arise as to the power, or the particular occasion or mode of its exercise, regard must be had to the various conditions and circumstances which affect the case,

and which ought and may be presumed to have influenced the legislature in conferring the power, and the action of the city government in its use. Every grant of power to a municipal corporation, is intended to be beneficial and efficacious to accomplish its purpose, and carries with it such incidental powers as are requisite to its exercise. If the exercise of a power granted draws after it a necessary consequence, the law contemplates and sanctions that consequence. The grant of a right is, by fair construction a grant of power to do all the acts necessary to its enjoyment.

In the present case, the city is taking steps for the construction of a canal, for which purpose ample power is conferred, in general terms, by the charter. This work is said to be required not only for the convenience of trade and commerce, but also for sanitary purposes; that part of the city which it traverses being low and flat, and requiring sewerage and drainage, for which this improvement will give the requisite facilities. Similar demands of trade and commerce, stimulating individual enterprise, have caused the construction of railroads in the city, which, with their connecting or competing lines, have not only penetrated the active centers of population and business, but have completely encircled the entire territory over which the city exercises its jurisdiction. It is obvious that very many of the public improvements, rendered necessary by the growth and progress of the city, must encounter these lines of railroads; and it is to be presumed that the legislature was fully cognizant of this fact, and considered it when it conferred on the city the power to which I have referred. We must, therefore, infer that the absence of an express grant to the city of the right to enter upon and appropriate, for its necessary corporate purposes, portions of the land and property acquired by the railroad companies for their use, does not necessarily debar the exercise of such right; but, rather, that the general grant of power was deemed sufficient to confer the right, not only in respect to the property of private persons, but of that of all corporate and public

bodies, whether acquired and held solely for private emolument, or for public use also; and that those general laws and principles which restrain and govern the manner and the extent of the exercise of such power, afford to all persons and interests ample protection from its abuse.

And it must be borne in mind that a broad distinction exists between powers granted to municipal corporations, exclusively for public purposes, and those granted to railroad companies, or other similar corporations where the benefit to the public, and its use, is merely incidental, and the supreme purpose of the corporation, and the principal use of its powers and property are for private emolument. To the former may wisely and safely be given a much more generous and ample construction of its powers, both express and implied, than to the latter. When, therefore, in laying-out, constructing or improving a street, canal, or sewer, or laying down gas or water pipes, or for any other corporate purpose, the city finds it necessary to enter upon and take some part of the land or property of a railroad company, it is, by necessary implication, clothed with the requisite power to accomplish the purpose.

There are, no doubt, limits within which the exercise of this implied power should be restrained. We may concede that the city would not be allowed to take the passenger depot, the engine-house, the freight depot, or other large and expensive structures of a railroad company, indispensable to its use, and without which its business would be broken up and destroyed, for some purpose for which other lands and property would be equally convenient and useful, and could easily be acquired. Nor to lay out a park, or public square, for the purpose of ornament or recreation, upon the lands of a railroad company so as to exclude it from the use of its tracks, cut off its lines of communication with other roads, and its own depots for business, and so destroy its usefulness, or work irreparable injury to its traffic. In these cases the end to be attained might be quite insufficient to warrant the

injury to public and private interests which would be the necessary consequence. The appropriation of the property by the city would be wholly exclusive, and inconsistent with its further use by the railroad company, and the right to such appropriation and use, under such circumstances, ought not to be inferred from a general grant of power, nor unless conferred in express terms.

.But in this case no appropriation of the property or franchises of the company is requisite or contemplated, which will exclude it from the use of its present tracks or lines of traffic, or any of them. For the present roadway of earth may be substituted a bridge over the canal when constructed, and the use of the tracks thus continued without being essentially impaired or diminished in convenience or efficiency. Both works, then, are consistent, and may well stand together — the canal and the railroad — and any injury which the company may sustain, and all expenses which it must incur, by reason of the appropriation of a small section. of its roadway and being compelled to substitute therefor a bridge, the city must compensate in damages. In this respect, as well as in others to which I have already adverted, the case differs widely from that of the *Boston and Albany Railroad Company* (53 *N. Y.,* 574), cited and much relied on by the counsel for the company as an authority in support of the objections urged against the exercise of the right claimed by the city in this proceeding. In that case the railroad company sought to take, for the purposes of its road, a public park in the village of Greenbush, and the court remarks : " It is not denied that a taking of this property by the applicant, and a user of it for the purposes of the corporation, is utterly inconsistent with its use as a public park, and that the village of Greenbush, as the trustees, and the people as the *cestuis que trust,* will be absolutely deprived of all benefit in and use of the property ; and the possession of the railroad corporation will be exclusive as of property taken under the act from private individuals." As, therefore, the

two uses of the property would be wholly inconsistent, and could not stand together, but that of the railroad must be exclusive, and the general statute under which the railroad company sought to exercise the power of taking the property did not confer that power in such a case in express terms, the court held that it could not be implied, especially as the powers expressly conferred on the railroad company could well be exercised without the appropriation of property actually held and used for another public use.

It was also held that, inasmuch as the power conferred upon railroad companies to acquire title to real estate by proceedings under the act, is limited (with some specified exceptions which do not affect this question) to those lands for the purchase of which they have been unable to agree with the owners, and as the park was not held or owned by the village of Greenbush as its absolute property, but upon special trust and for the public use, and could not be sold or disposed of by the village or in any manner diverted by it from the use to which it was dedicated, nor be the subject of any negotiation for that purpose, therefore the railroad company could not acquire it under the provision of the act.

The reasoning and conclusions of the court in that case are alike satisfactory, and the doctrine it maintains is entirely in harmony with the principles and conclusions which govern my decision of this case. For in this case the use of the property to be taken, and now possessed by the railroad company, will not be exclusive in the city, but may be continued by the railroad company, though in a different mode. And without the exercise of the power to take land, claimed by the city in this and similar cases, the works of local improvement necessary for the corporate purposes of the city, and for the execution of which the power is expressly conferred by its charter, could not be constructed.

It is urged by the counsel for the railroad companies that inasmuch as the charter of the city provides that the fee of the lands taken by this proceeding shall vest in the city, the

railroad companies will be deprived of all property and interest in the lands taken from them, and of all right thereafter to use or occupy them, and will therefore be left, in their most important interests, entirely at the mercy of the city authorities, who may at any time wholly debar them from the lands taken. I do not so understand the effect of these proceedings, or that the proper construction of the provision of the city charter referred to, can give to the city any such right. Though the lands of the railroad company are held for the benefit and emolument of their corporators, and are, in that sense and to that extent private property, so as to entitle the companies to indemnity for any loss or injury they may sustain from an appropriation of their lands by the city; yet all their lands are, as we have already seen, expressly declared by statute to be acquired and held for public use. And the city also takes the lands which it acquires in proceedings like this solely for the public use, and the fee with which it becomes vested is simply that of a trustee holding for such use. It creates no private or exclusive right or property in the city corporation, as against the public. And its right to take these lands already held, for any other public use, rests upon the conclusion that the two uses are entirely consistent, and may well stand together. So that though the public may use the lands for the contemplated canal, yet their use of the same lands for railroad purposes will not be essentially hindered or disturbed.

It was suggested by the city attorney, on the argument, that the power to lay out and construct the canal in question through the lands of the railroad companies, may be found in the provisions of chapter 62 of the Laws of 1853, by which it is made lawful for the authorities of any city, village or town in this state who are by law empowered to lay out streets and highways, to lay out any street or highway across the track of any railroad, without compensation to the corporation owning such railroad. Doubtless a canal is a highway in the broadest and most comprehensive sense of that term. But I

do not think that the act referred to was intended to be applied to water-ways, or to other streets or highways than those constructed for the ordinary purposes of land carriage and travel. And I prefer to rest the power of the city to construct the canal in question upon the provisions of its own charter, and the application thereto of the principles I have laid down in the consideration of this case.

In conclusion, I ought, perhaps, to say that whether it is necessary or wise to construct the canal contemplated by these proceedings; whether it will accomplish the purposes designed, and whether its value as a public improvement will be commensurate with the very large expense to be incurred, are questions with which this court has nothing to do, and which I have purposely refrained from considering. The power to determine them is conferred by law upon the common council, and the decision of that body is final and conclusive.

The motion for the appointment of commissioners is granted, and Messrs. William A. Bird, Edward L. Stevens and Charles D. Marshall are appointed such commissioners.