Johnson, J.
The questions involved arise on a demurrer to the answer.
The petition, which is in the nature of an information, was filed by the direction of the general assembly. 78 Ohio Laws, 427. Its object is to determine the authority of the defendant to occupy and use as a track for its railway a' portion of the berme bcmlt, of the Miami & Erie Canal, belonging to the state, within the county of Hamilton. This involves the power of the board of public works of the state to enter into the agreement hereinafter set forth, with the defendant, under which the latter claims the right to permanently occnpy and use for the purposes of its track, that portion of the berme bank of said canal lying between Broadway, in the city of Cincinnati and the six mile stone, north of said city.
It is alleged that this portion of the canal is in constant use for the purposes of navigation; that about one-third of the distance is composed of embankment; one-third of embankment on one side, and excavation on the other, and exclusively of excavation for the residue of the distance.
The petition charges, that the contract under which the defendant claims to act is without authority of law, and is void, that defendant is making preparations to construct and maintain its track on said bank, and threatens to permanently occupy and use the same as a railroad, which if consummated, *168 ■will constitute a permanent trespass on the property of the state, and be a violation of its rights.
The answer, after setting out the corporate character of the defendant, under which it it is authorized to construct and operate a railroad between the termini named, denies that it is acting without authority of law. It sets up a contract made with the board of public works, under certain orders of the board dated January 4, .1881, the terms and conditions of which were in all respects complied with by defendant, by virtue of which it has the lawful right to build, maintain and operate its railroad on and along said bank between the points named, in consideration- of the payment of $500 per annum, and the performance of certain requirements of the board of public works. .
These “ orders of the board of public works,” which are the basis of the rights of defendant, are preceded by a preamble, reciting an agreement previously made with the College Hill Railway Company, whereby permission had been granted that company to improve said berme bank, so as to be the more useful to the canal, and at the same time occujjy the same for railway puiqjoses, in such a wray as jiot to interfere with navigation, and that said company had failed to comply with said agreement, and forfeited its rights.
It is further recited, that the defendant herein, deeming it necessary to make use of this section of the berme bank for their railroad, offer to comply with the terms of the agreement with the College Hill Co., with such additional conditions as may be deemed necessary by the board for the protection of the interests of the state; therefore, it is ordered, that defendants be permitted to enter upon and improve said bank, with the track and fixtures of its road, upon the terms and conditions, that it will maintain and keep in repair said bank between the points named, without any expense to the state ; that it will not interfere with the navigation of the canal, and will pay annually the sum of $500. This grant was made subject to twenty-one specific conditions or regulations, as to the manner of constructing and using tbe railroad, &c., all of whieh were intended to guard the rights of the state, and *169 protect the canal proper from being obstructed, or its usefulness from being impaired.
To this answer a demurrer has been filed, which raises the only question we shall consider, i. e., the power of the board of public works to grant this right of way.
The defendant claims that the board had power to make this grant, and relies; 1st, on section 3283 of the Revised Statutes; 2d, on section 7691 of the same. Section 3283 is as follows:
“ Section 3283. If it be necessary, in the location of any part of a railroad, to occupy any public road, street, alley, way or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it be necessary, in the judgment of the directors of such company, to occupy such road, street, alley, way or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road in the manner and upon the same terms as is provided for the appropriation of the property of individuals; but every company which lays a track upon any such street, alley, road or ground shall be responsible for injuries done thereby to private or public property, lying upon or near such ground, which may be recovered, by civil action brought by the owner before the proper court, at any time within two years from the completion of such track.”
Section /T691 provides that: “The board of public works shall have charge of the public works of the state, and shall have power to perfect, render useful, maintain, keep in repair, and protect the same, and to that end shall' have power to remove obstructions therein or thereto, and to make such alterations or amendments thereof (whether now or hereafter constructed), and to make such feeders, dykes, reservoirs, locks, dams, and other works, devices, and improvements, as they may think proper for the respective purposes aforesaid.” And the board is authorized to purchase or appropriate all *170 such real and personal property as they may deem necessary for such purposes.
The question is, do these sections or either of them authorize this contract. In the construction of either, the other and all other provisions of law m %>a/ri materia must be.considered. Section 3281 authorizes a railroad corporation to enter upon any land for the purpose of examining and surveying its railroad line, and may appropriate so much thereof as may be deemed necessary for its railroad, including necessary side tracks, depots, workshops, round-houses, water-stations, material for construction, except timber, a right of way over adjacent lands to enable it to construct and repair its road, &c., but no appropriation shall be made of private property, until full compensation shall be made to the owner.
The object of section 3282 is to clothe such corporations with capacity to acquire lands by purchase or -gift, that are convenient or necessary to secure the right of way or any lands granted to aid in the construction of the road.
Section 3283 confers additional powers, and is the one relied on to support this contract. It authorizes the corporation, if it be necessary to the location of “ any part of a railroad ” (this includes all the essential parts mentioned in section 3281, such as side-tracks, depots, &c.), to occupy any public road, street, alley, way, or ground of any kind, or any part thereof; to agree with the authorities owning or having charge of the same, upon the manner, terms, and conditions on which the same may be used and occupied; and if the parties are unable to agree, then the company may appropriate so much thereof as may be necessary, in the same manner, and upon the same terms as is provided for the appropriation of property of individuals. This section confers upon the corporation the same power to acquire this class of public property, either by agreement with the proper authorities, or by appropriation, as it possesses under section 3281 as to private property. If the company is unable to agree with those in charge of this species of property, it may resort to the courts, in accordance with the terms and provisions of the Revised Statutes, sections 8414r-6453. :
*171 These provisions, like section 3281, apply only to private property, but as the state held in many cases as a trustee, sections 29 and 16, and lands granted in lieu of section 16, for ministerial and school purposes, express authority was given by section 6139 to appropriate a right of way through these lands. This right to appropriate in case of a failure to agree, embraces all property that may be the subject of such an agreement.
By a compulsory purchase, the corporation may acquire any property it could by agreement.
■ Are the canals of the state included within the terms-of this section—“ any public road, street, alley, way or ground of any kind ” ? It is conceded that a canal does not fall within the terms road, street, or alley. Are they “ public ways,” or “ public grounds of any kind” ?
The construction of these canals marked an era in the development and growth of the state. The object was to effect a navigable communication between Labe Erie and the Ohio river, in order to promote “ the agricultural, manufacturing and commercial interests of a number of our sister -states of the union generally, and of this state particularly.” 2 Chase Stat. 1131. They were constructed at great expense for the public convenience and welfare. The lands on which they were located were once private property, acquired by the state, by the exercise of its sovereign right of eminent domain. When they were completed and opened for navigation, they were public navigable highways. The state constructed and has ever since owned and maintained them as a means of contributing to the general public welfare. The state is not the owner in the same sense that a state owns any part of the public domain, or the buildings or property it holds for the use of its officers and agents, to enable them to perform the duties of their offices, but rather as the governing and supervising trustee of the public, charged with the duty of so regulating, controlling and maintaining them, as to make them subservient to the public welfare as navigable public highways. As such, they were public property, in the same sense as the navigable l’ivers within the state.
' The statutes in force from time to time, show how careful- *172 the state has been to preserve these great highways, as they were then, and still are regarded, from all encroachments that might interfere with their usefulness. No private, public, or corporate right was allowed to interfere with their use for purposes of navigation. The statutes relating to the public works are replete with provisions and regulations having this object in view. Thus the interest of the public in a state and county road was made subservient to that of the public in these navigable highways. Under section 14 of the act to provide for the protection of the canals of the state, &e., passed March 23, 1840 (1 S. & C. 202), the acting canal commissioner, if deemed necessary by the principal engineer, might, in laying out and constructing the canal, discontinue or alter any public highway.
So; in cases of new roads laid out across any canal or navigable feeder thereof requiring a bridge, section 15 of the same act requires that it shall be constructed at the expense of the county, and punishes any person who shall undertake to construct such a bridge without first obtaining the approval of the model and location of the same by the acting commissioner or principal engineer. These, with numerous other provisions of law which might be cited, show that in all conflicting public uses arising between the canals and public highways, the public use for canal purposes was regarded as paramount to all others.
This is equally true as to the railroads of the state. "When the canals were constructed and first opened for navigation, railroads were unknown in Ohio. When they were being constructed their rights to cross the canals and the terms and conditions of such crossing became a subject of much controversy.
Section 11 of the act of 1848 (1 S. & 0. 271) being “ An act regulating railroads,” contained substantially the same provision as section 3283 ■ now does, as to the right to use the public roads, &c., for railway purposes; yet no one then supposed that the franchises granted to railroad companies authorized them to appropriate any part of the canals of the state for their use. This controversy between the board of public works and the railroad companies related solely to the right to cross the canals, and the proper plan of bridges so as not to *173 interfere with tbe canals. This difficulty was adjusted by tbe act of May 1, 1852 (1 S. & C. 318, 319). The 1st and 2d sections of this act prescribed the duty of railroads competing with the canals, as to rates for freight. The 3d section requires the board of public works to permit every railroad company adopting and adhering to the rates of freight required by sections 1 and 2, to construct bridges across the navigable canals, feeders, &c., provided the diagram and plan of the bridge shall be approved by the board, or the acting commissioner.
Section 4 provided that all bridges that had therefore been erected across the canals,- &c., which did not obstruct or impair navigation, and were not less than ten feet above the top waterline, should be permitted to stand. By section 3317 of the Revised Statutes the right of railroads to cross the canals is restricted so as not to impair navigation thereon. The plan of the bridge and other fixtures for crossing the canal, and the location, must be approved by the board or acting.commissioner, but if they disapprove it, then application must be made to the court of common pleas or judge thereof for such approval, but even the court has no power to approve the plan, where the bridge is less than ten feet above the top water-line of the canal, or where the piers or abutments interfere with navigation.
These provisions clearly show the care the legislature has taken to preserve the canals.
They show further, that as between the two public uses, that for purposes of navigation is paramount over public uses for railroads, even as against the right to cross.
By sections 12 and 13, article 8, of the constitution, it is provided that there shall be a board of public works, to consist of three members, to be elected by the people, so long as the state shall have public works which require superintendence. The powers and duties of this board to be such as were then or might thereafter be prescribed by law. These powers and duties are prescribed in great detail, in the statutes relating to the public works of the state, and are found in the Revised Statutes, sections 7651 to 7913.
*174 Section 7691 is a summary thereof in general terms. They, the board, “ shall have charge of the public works of the state, and shall have power to perfect, render useful, maintain, keep in repair and protect the same, and to that end shall have power to remove obstructions,” &c. This is a power of superintendence for the protection and maintenance of the canals, including everything that pertains to them.
The board of public works possesses no powers except such as are expressly conferred by law, or as are necessarily implied, the purpose of which is, to perfect, render useful, maintain, keep in repair, and protect and make the canals useful as navigable highways. It may be conceded, that the state has power to sell, lease or abandon them. It may grant easements or rights for other public uses. It may by neglect or by unfriendly legislation impair or destroy their usefulness. It may also be true that in these days of improved methods of commercial intercourse, canals are relatively of minor public importance, but so long as the present policy of the state, as shown by its laws, stands, the courts must carry out that policy. It is for the legislature, not for the board of public works, nor for the courts to change it.
That policy has always been and still is to regard the canals of the state as a public use of'paramount importance, as against other public uses, such as common highways and railroads.
The most cursory examination of the numerous provisions of law relating to the public works of the state will show, that while the legislature has freely granted the largest powers to the board for this purpose, it has at the same time, by regulations, prohibitions and penalties, sought to guard this property from all encroachments, individual or corporate, and to prevent the acquisition of rights or easements in the canal or its banks except by express authority of laws passed for that purpose. The board of public works possess no power to grant rights, easements or privileges for private advantage, unless expressly authorized by law. The statutes authorizing the abandonment or sale of certain sections of the canals', the transfer to railroads and cities for their purposes, of other sections, the permission granted by statute to use the berme bank in certain instances, *175 the leasing of the canals, the leasing of surplus water, the sale of ice, and the restrictions as to crossing by public roads, and by railroads, all show that the board in the opinion of the legislature possessed no implied power to grant rights and privileges, or to create easements or burdens upon this public property in favor of individuals or corporations. In each of these cases express authority was conferred by statute.
As already stated, section 3283 is substantially the same, as to the power to agree for the use of public roads, &c., as section 11 of the act of February 11, 1848, which was the general act relating to and regulating railroads prior to 1852. This act antedates most of the present statutes relating to the powers and duties of the board of public works. The latter may therefore be regarded as the latest expression of the legislative intent, and the limitations and restrictions on the powers of the board therein contained must not be lost sight of in the construction of section 3283, as they clearly demonstrate that neither section 11 of the act of 1848, nor 3283 of the Revision conferred this power.
Again, the word “ way ” or “ public ground,” does not include the public navigable canals of the state in express terms, nor by necessary implication.
A way, in the connection in which it stands in this section, must be regarded as something of the same nature and kind as a road or street.
The canals of the state are everywhere in the statutes so denominated. They are specifically named wherever legislation includes them. The public works of the state embrace canals, feeders, slack-water improvements, &c. For the same reason the canals cannot fall within the term “ public ground.”
Section 3283 is among the grants of power to railroads. It is one of three sections conferring upon such corporations capacity to acquire land for right of way, side-tracks and depot grounds. The powers and duties of the board of public works are found in other statutes specially enacted for that purpose. All these statutes must be considered in determining whether section 3283 confers power on the board to agree to the use of the canal for this new and additional public use.
*176 Another canon of construction applicable to general statutes like this is : that “ the state is not bound by the general provisions of a statute, unless it be so expressly enacted.” Ohio ex rel. v. Board of Public Works, 36 Ohio St. 409.
This rule is of special force where any of the prerogatives, rights, titles or interests of the state are sought to be divested. State v. Kline, 41 N. II. 238; Broom Leg. Max. 51. The principle is well established, and is indispensable to the security of the public right. The general business of the legislative power is to establish laws for individuals, not for the state. "When its rights are to bo transferred or affected, the intention must be plainly expressed or necessarily' implied, and this principle applies with peculiar force to grants of corporate privileges, or franchises in public property. Jones v. Tatham, 20 Penn. St. 398; State v. Garland, 7 Ired. 49. In view of the character of this property, built at the public expense, and devoted to a paramount public use, for the convenience and welfare of the people of the state, and held in trust, protected and maintained by the state in its sovereign capacity as great navigable highways, we think this rule of law has peculiar force.
We do not question the power of one corporation authorized to appropriate land for a public use, to acquire the property of another or of the public, also devoted to the same or another public use, but such power must be conferred by express terms, or by necessary implication. Such implication does not arise when the express powers conferred can by reasonable intendment be exercised without such appropriation. Matter of B. & A. R. R. Co., 53 N. Y. 574; Inhabitants of Springfield v. Conn. R. R. Co., 4 Cush. 63; Stevens v. Paterson & Newark R. R. Co., 5 Vroom, 532.
In the case at bar no absolute necessity is shown to use the berme bank of the canal, even were it subject to condemnation. In such cases the presumption is in favor of the public and against such necessity. See also Matter of City of Buffalo, 68 N. Y. 167.
Cases are not wanting to the point that the public lands of the state, not necessary to its use, may be occupied where they *177 lie between the termini of a railroad authorized to be constructed.
It need only be said of these cases, that even if sound, the principle on which they rest is, that these lands are not already dedicated to other public uses of equal or paramount importance, and are necessary to the uses for which they are dedicated.
Some reliance is had on the -ease of Chagrin Falls & C. P. Co. v. Cane, 2 Ohio St. 430.
There the charter of the Planhroad Co. authorized the directors to enter upon and take possession of any lands, roads, streets, alleys, &c., and it was held that under this grant the company could occupy and use a public county road, and that such appropriation withdrew the road from the control of. the supervisor.
The ground for this conclusion as stated, is, that the new public use was the same as the old, i. e., a public highway for travel, the only change being, that instead of being kept in repair by taxation, it is done by tolls. In that case the power was granted in express terms to occupy any road, &c.
We do not question the power of the legislature to authorize, a change of public uses, but in the terms of the syllabus in Hickock v. Hine, 23 Ohio St. 523; “ where the legislature has power to require one public easement to yield to another moi’e important, the intention to grant such power must appear by express words, or necessary implication; and such implication only when requisite to the enjoyment of the powers expressly granted, and can be extended no farther than such necessity requires.”
Another important consideration is, that the right of the company to appropriate, the public property is co-extensive with the power to acquire by agreement, and may be resorted to in all cases where the authorities fail to agree. It will hardly be claimed that any portion of the canals are subject to proceedings for condemnation. If so, then it is within the power of railroad corporations to destroy the public works of the state, if the directors deem it necessary to so locate their roads. The berme bank of the canal is part thereof, and *178 equally protected by law from all occupancy or intrusion, as any other part.
But it is urged that the board of public works have not agreed to anything tending to destroy or impair the public uses to which the canals have been dedicated, but that this contract is intended to simply add an additional use, by so improving the berme bank, so as to be more useful to the canal. This is not a question of what is expedient or beneficial to the public. It is a question of power. If the board is vested with a discretion to subject the berme bank of the canals to a new use foreign to the original purpose, and competing with the canal as a means of transportation, where is the limit of that discretion? The exercise of this discretion would in' time greatly impair the revenues of the canals, and ultimately destroy the canals themselves.
If the board can agree to grant part why not all? If the company can condemn part, it may take the whole, “if it be necessary in the judgment of the directors.” West Boston Bridge v. Co. Comm'rs, 10 Pick. 271. It is for the legislature, and not its subordinate agents, the board of public works, to authorize such additional public use and to confer such authority. It is the only power in the state authorized to declare that this new use of the canal and its banks, or any part thereof, is more important than the existing use to which it is dedicated.
This contract is, therefore, without authority of • law,' and confers no right, on the defendant.

Judgment accordingly.