with directing the reporter to note his dissent. At times, however, when his strong conviction of truth and justice bore down and overcame his abhorrence of debate, he would, in a dissenting opinion, rich with legal lore, rising even to eloquence in his earnest vindication of truth against precedent, place on record the reasons for his dissent. On these occasions he disclosed, that beneath his modest and unassuming exterior, there slept an iron will, and an inflexible purpose, that nothing could swerve from the path of duty.

When he made these struggles, he more than once, unaided, by his own strong intellect, arrested the current of judicial decisions, and by legislative enactment it was made to flow in the channel he had marked out as the true course of justice. His dissenting opinions in Coles vs. Kelsey, 24 Tex.; Sylvester vs. Walker, 3 Tex.; Snoddy vs. Cage, 5 Tex., all mark epochs in our judicial history. These, with many other opinions to be found in the first 26 volumes of the reports, fairly entitle Chief Justice Wheeler to be ranked among the eminent jurists of our land.

## CITY OF INDIANOLA vs. THE INDIANOLA RAILROAD CO., et al.

BY COMMISSIONERS OF APPEAL AT GALVESTON TERM, 1882.

*Liability of Railroads after Consolidation—Use of Streets—Stipulated Damages.*

First.—When by agreement two railroad companies had consolidated under a distinctive name, which being confirmed by the legislature, the consolidated company became bound for the liabilities of the two old companies.

Second.—The city council and railroad company entered into a contract whereby the latter, in consideration of the privilege of occupying some of the main streets of the city as a roadbed, bound itself in a bond of $50,000 to complete the road to a point in the interior, sixty-five miles from the city, within twenty-two months. Held, that the consideration for the contract was sufficient. That the city council had power over the subject matter of the contract, and that the same was not *ultra vires* as to either party.

Third.— Where the bond stipulated, that is, if the company failed to complete the railroad, to the designated point within the time named, then it would pay the city the sum of $50,000 stipulated damages.

Held, that it was in effect an alternative agreement, to complete the road

to a point named within the time specified, or else pay the city the amount named in the bond, and upon this ground the amount named must be considered as stipulated damages, and not a penalty.

Held further, that the damages resulting from the breach of such a contract would be difficult, if not impossible of ascertainment, and as the parties had by contract fixed the amount of such damages, it must, upon that ground, be considered as stipulated damages, and not a penalty.

Appellant brought this suit June 28, 1872, against appellee, to recover upon a bond for $50,000 and interest. The substance of the case made by the petition is that the city of Indianola is an incorporated city; that the Indianola railroad was incorporated by special act of the legislature with its principal office at Indianola, that on the fourth day of August, 1870, the same was consolidated with the San Antonio and Mexican Gulf railroad company under the name and style of "The Gulf, Western Texas and Pacific railroad company," by special act of the legislature passed the fourth day of August, 1870, and contract made in pursuance of the same. That the Indianola railroad company was created by act of the legislature, approved January 21, A. D., 1858, and the San Antonio and Mexican Gulf railroad company was created by act approved September 5, 1850. That said companies were authorized by their charters to construct a railroad from the mouth of Powderhorn bayou, on Matagorda bay, and from the town of Lavaca to the cities of Austin and San Antonio. And by the act of consolidation, the Gulf, Western Texas and Pacific railroad company was authorized to construct such railroads. The eleventh day of April, 1870, the Indianola railroad company applied to the city authorities for the right-of-way over certain of the streets and alleys of the city, which was refused on the ground that the construction of the road on the line designated would be detrimental to the interest of the city, etc., unless the road should be speedily extended at least sixty-five miles into the interior. June 20, 1870, the city council passed a resolution granting to the company the right-of-way on the desired line upon conditions set forth therein, among others that said company should execute a bond in the sum of $50,000, conditioned that the company would construct and complete alone, or in conjunction with other companies, a continuous line of railroad from Indianola to the town of Victoria, and to a point twenty-five miles beyond, within twenty-two months from July 1, 1870. On June 21, 1870, the board of directors of said company passed a resolution accepting the grant of the right-of-way on the conditions mentioned, and authorized the president thereof to receive a deed from the city, and to execute and deliver the required bond.

The deed was made, executed and delivered by the city the same day, and the same day the company, through its president, made, executed and delivered the bond.

That said company was afterwards consolidated as above stated, and that the company had failed to construct and complete the railroad to the point designated within the time therein named, but that it had failed and refused to comply in this particular with the terms of said bond. That the said company had constructed the road through the city of Indianola along the streets and alleys designated in said deed, and was then continuously occupying the same with its cars to the great disadvantage, inconvenience and damage of the city. The prayer is for a judgment of $50,000 as stipulated damages with interest.

The defendants filed general and special exceptions, among others upon the following grounds:

First.—That it appears from the petition and exhibits, that the consideration for the contract sued on, is illegal, for that the company had the right to the use of the streets without paying any compensation therefor, and the city had no power over the subject matter of this contract.

Second.—That the contract was *ultra vires*, both as to the railway company and the city.

Third.—That the amount named in the contract or bond is a penalty and not stipulated damages.

The cause came on for trial October 3, 1873, when the court sustained appellees' demurrers to appellant's petition, and rendered judgment that appellee go hence without day, and appellants pay costs, etc. From that judgment this appeal was taken, and errors assigned as follows:

First.—The court erred in sustaining the defendants general and special demurrer to plaintiff's petition.

Second.—The court erred in dismissing the above entitled suit upon demurrer.

*Opinion:* All the questions presented by the record, arise out of the sustaining of appellees general and special exceptions to the appellant's petition. These questions may be stated and considered in the following order:

First.—It is claimed that the consideration for the contract sued on is illegal, for that the railway company had the right under the law to occupy the streets and alleys of the city as a roadbed, without paying any compensation therefor, and that the city had no power over the subject matter.

Second.—That the contract was *ultra vires*, both as to the railway company and to the city.

Third.—That the amount named in the contract is a penalty, and not stipulated damages.

Preliminary to the determination of these questions, it may be

assumed as settled law, that the consolidation of the Indianola railroad company with the San Antonio and Mexican Gulf railroad company, under the name and style of "The Gulf, Western Texas and Pacific railway company," by virtue of an act of the legislature, passed the fourth day of August, 1870, renders the consolidated company liable, for all the valid contracts and liabilities of the two companies thus consolidated. Stephenson vs. Texas and Pacific railroad company, 42 Tex., 166; Texas and Pacific railway company vs. Murphy, 46 Tex., 360. Was the purported consideration of the contract or bond, paid or furnished by the city of Indianola illegal?

Our statute then in force was in effect, that any railway company chartered by the laws of this State, had the right to construct the main track of the road, through the corporate limits of any city or town on the line of the road, and for that purpose might use any of the public streets or alleys, without paying any compensation therefor. And in the event the people or authorities of such city or town should oppose the passage of any road through or over any particular street or highway, that the State engineer or such person as the governor might appoint, on the application of either the company or the city or town, should designate the streets, alleys, highways through and over which such road should pass, and that in the selection of streets or highways, a due regard should be had to the commercial interests and convenience of the city or town, and that no main business street or highway should be appropriated for a railway track, if another might conveniently be made to answer. Paschal's Digest, arts. 4936, 4937 and 4941. Prior to the execution of the contract under consideration, the railway company applied to the city authorities for permission to occupy certain streets and alleys as a roadbed. This application was refused. When this was done the company could, under the statue, have called upon the State engineer to designate the streets and alleys over which the roads could pass, and after such designation, it could have constructed and maintained its road in accordance therewith, without having to pay any compensation to the city for the use of such streets and alleys.

It will be observed that the statute does not give the company the right to occupy such streets and alleys as it may select in opposition to the will of the authorities of the town or city. But, on the contrary, due regard in this particular, must be had to the commercial interests and convenience of the city or town, and when called on either by the company or city or town, the State engineer is required to observe that rule, and also not to designate any main business street for

the purpose, if another could be conveniently made to answer. Now while the company had the right to pass through the city, and occupy with its road the streets and alleys necessary to that end, without paying compensation, it did not have the absolute right to occupy such streets and alleys as it might select, regardless of the commercial interests of the city, and against the will of these authorities.

Upon the refusal of the city authorities, the railway company had the right to call in the State engineer to designate the route through the city, but in doing this it would have no assurance that the line selected, and which it is presumed was most desirable to the company, would be designated by the State engineer. In this dilemma, the company preferred to settle the matter by agreement, and compromised with the city, rather than risk a designation by the State engineer, that is, the company choosed to pay the city for the right-of-way on the line desired, rather than accept that which might be designated by the State engineer, without compensation having to be made.

There is nothing in the law that would prevent the company from making such contracts with respect to its right-of-way, upon the one hand, or the city upon the other, from contracting with regard to its streets and alleys to be used as a roadbed. It is plainly inferable from the provisions of the statute cited above, that railway companies and the cities or towns, could settle such matter by agreement between themselves, and instead of being prohibited, it appears to us that such agreements are authorized by the spirit of the law.

It does not follow from the fact that the company might occupy with its road some of the streets and alleys of the city without compensation, that the city could not refuse to allow the use of such of its streets, as would be injurious to its commerce and inconvenient to its citizens. The city authorities control the streets for the benefit and convenience of the citizens, and have no power to sell and convey the same; yet there is no principle of law that would preclude them from consenting to an easement therein, for a railroad company to use the same for a roadbed.

And the use in this way of some of the streets of the city might be detrimental to its commerce and inconvenient to the citizens, hence we see no reason why these authorities might not contract for a compensation enuring alike to all of its citizens for submitting to such injuries and disadvantages. Surely after the company had received, and is in the enjoyment of the fruits arising from such a contract, it will not be heard to complain, and assert that the city could not confer upon it the rights that it had thus received and is now enjoying.

We conclude that the consideration paid and furnished by the city of Indianola for the contract sued on is not illegal and that the city authorities had power over the subject mat, ter of the contract.

Appellee claims that the railroad company had no power to make the contract sued on. Upon this point Mr. Pierce, in his work on railroads, pages 499, 500 and 501, uses this language : Corporations have an implied power to make such contracts as are usual and necessary for carrying into effect the purposes for which they were created. A railroad corporation is usually authorized to make contracts by an express provision of statute; but in the absence of such a provision the power is implied as necessary and incidental to the express power to locate, construct, maintain and work a railroad. The power, whether express or implied, must, in view of the purposes and methods of such an enterprise, be allowed a liberal scope, etc., etc., etc.

The power of a corporation, in respect to contracts and business dealings, extends not merely to those which are absolutely essential or indispensable to the performance of the specified acts authorized by its charter, but as well to those which, not being prohibited by statute or public policy, are designed and may be useful to promote the main enterprise. The choice of means which are reasonably promotive of the main purpose is with the corporation; and, where different methods stands this test, judicial tribunals will not revise its discretion by holding that the one chosen was not indispensable, and that another might have been more easily taken, etc., etc.

The contracts of a corporation are presumed to be within its powers, and the burden of showing its incapacity by the terms of the charter is on the party who denies their validity.

The principles with respect to the question of *ultra vires* have been deduced by Mr. Pierce, from a review of all the leading cases, both English and American : and may be considered as the settled rules to be applied to the question.

An examination of Green's Brice's *ultra vires*, from page 28 to 43, fully sustains the conclusions of Mr. Pierce quoted above. While the English case, and especially those decided by the House of Lords, go still farther, and in my opinion places the whole matter upon a more reasonable and satisfactory basis. in Eastern Counties Railway vs. Hawkes, Lord St. Leonard : I trust that this decision, and the decisions of this house during the present session in the cases of National Exchange vs. Drew, and in Borgate vs. Schortridge, will place the powers and liabilities of directors and their companies in making contracts, and in dealing with third parties upon a safe and na-

tional footing. They do not authorize directors to bind their companies by contracts foreign to the purposes for which they were established, but they do hold companies bound by contracts duly entered into by their directors for purposes which they have treated as within the objects of their acts, and which cannot be clearly shown not to fall within them; and they further hold companies to be bound by a continued course of dealing by their directors, with third persons in relation to their shares, although that mode of dealing is contrary to the regulations of their deed of management. I hope that we shall have no other cases before us, where the defense of a company rests upon the want of power to make a contract which the directors deliberately entered into, and under which they took a benefit, or upon the irregularities of their own proceedings.

In the case before us the power to contract with respect to the right-of-way by the company must be considered as essential to the construction or operation of the road. It would be worse than folly for the legislature to grant the company the right to construct and maintain a railroad, and at the same time throw about it such legal restrictions as would prevent it from securing the right-of-way by contract upon which to construct the road; that the directors of the company had the power to contract with respect to the right-of way is obvious. When the city refused to permit the company to occupy with the roadbed such streets and alleys as it had selected, then the directors had the choice, either to call in the State engineer and construct the road upon the line designated by him, or to secure that of its choice by contract or agreement from the city.

Having adopted the latter course this court will not undertake to revise the discretion of the directors in this regard, even though it should appear, as it does not in this case, that the other course might have been more wisely taken by them. Baltimore vs. Baltimore and Ohio railroad company, 21 Md., 50-92; Curtis vs. Leavitt, 15 N. Y., 9-65; Madison W. and P. plank road company vs. Watertown and plank road company, 5 Wis., 173; Norwich v. Norfolk railroad company, 4 El. and Bl., 397. This defense of the company that its directors had no authority to make the contract when the desired right-of-way had been secured by it, and the company had been for years and was still in the enjoyment of the same, to say the least of it, is an exceedingly narrow defense, shorn of all equity and is entitled to no favorable consideration.

We conclude that the contract under the consideration is not *ultra vires* as to the railroad company.

As before remarked, it is inferable from our statute, that

the city of Indianola had the right and power to contract with the railroad company, in regard to the particular streets to be occupied by the road.   These streets are public property, and notwithstanding the powers conferred by the legislature, upon the city authorities with respect to them, they remain public and subject to legislative control.   The legislature might authorize their use by railroads as a roadbed, without compensation to the city. People vs. Kerr, 27 N. Y., 188; *In re* Boston and Albany railroad company, 53 N. Y., 574; City of Clinton vs. Cedar Rapids and Missouri R. R. R. company, 24 Iowa, 455. But it must be remembered in this particular, our legislature did not give the railroad company the right to use without compensation any street it might select, on the contrary the use in this way of the main business streets are not ordinarily permitted, if objected to by the city authorities.   Here these authorities had objected to the streets selected by the company, and that they could waive or withdraw that objection admits of no doubt.

And it seems to us equally as clear, that in yielding or withdrawing their objections to the use of the particular streets by the company, that as a consideration for the disadvantages to the city in the early extension of the road into the interior, with reference to this contract, the city authorities yielded nothing but that which they had the right to yield ; no debt was created upon the part of the city, that would necessitate the levy of a tax to pay ; by the contract the city had yielded an advantage in regard to the use of the streets, and this was done in consideration of the advantages to accrue to the city, by the correlative promise upon the part of the company to extend the road into the interior, a given distance by the time named.

We don't think that this contract is illegal, for the want of power in the city authorities to make the same.

This brings us to the consideration of the only remaining question presented by the record, to-wit : is the amount named in the bond or contract sued on, stipulated damages or a penalty ? Here, judicial decisions, as well as text writers, have taken a wide range, resulting in considerable confusion and doubt.   We deem it altogether unnecessary to enter upon an extended discussion of the subject or to attempt to reconcile seemingly irreconcilable decisions, upon points incidental to the main question, as we are of the opinion that a proper application of a few plain and well settled principles of construction, will be determinative of the question presented by the record.

The authorities generally concur, that in construing this

class of contracts, as well as all others, the courts are governed by the intention of the parties, such intentions generally to be arrived at by a consideration of the language employed, and the subject matter of the contract.

Sedgwick on the Measure of Damages, 419; Field on Damages, §136.

The following quotations from the work of Mr. Field are given, because it seems to us, the rules and principles therein announced, are supported by the general current of authority.

Rule 9, page 29, "Where the parties have stipulated as to the amount of damages that will ordinarily fix the amount recoverable, whether the actual damages be greater or less than the amount thus fixed."

§134. It is not unusual for the parties to a contract to stipulate therein, in reference to the amount of damages in case of a breach thereof. The sum thus fixed upon is generally called liquidated damages. The right of parties to thus stipulate is unquestionable. In many cases it is the only practicable way of obtaining redress in case of a breach. Public policy and private interests may be thereby promoted, and where such a contract is fairly made, and for the legitimate purpose of determining the damages, either for a breach of the whole or any particular provisions of the contract, the amount thus fixed will control and limit the damages recoverable, whether the actual damages be greater or less than the sum stipulated.

§155. The sum expressed will be treated as liquidated damages.

1. When the agreement is in the alternative to do some particular thing, or pay a particular sum of money, unless it shall appear unconscionable.

2. When the actual damages will be difficult or impossible of ascertainment, especially when the sum is not so unreasonably large as to induce the presumption that the parties did not contemplate its payment.

That part of the bond out of which the question directly arises is in the following language:

"Now, therefore, if said line of railway, sixty-five miles long, running from said city of Indianola, through the town of Victoria, and to a point twenty-five miles beyond, shall be constructed as aforesaid, within the time aforesaid, then this obligation to be void and of no effect, otherwise to remain in full force, and to be binding on said company, for the full sum of fifty thousand dollars aforesaid, as stipulated damages."

Looking to the substance of this contract, without regard to its form, and it appears to us to be an alternative agreement, that in consideration for the consent of the city to the

occupancy of its main business streets by the road, that the company bound itself to construct the road as named or in the alternative to pay the city the said sum of fifty thousand dollars.

Conceding, however, that such is not the case, then it is true that the actual damages resulting from a breach of the contract by the company, would be almost, if not quite, impossible of ascertainment. For who could say what damages resulted to the city by the continued use of its business streets by the cars of the company? Who could determine with any certainty the advantages resulting to the company from such continued use of their streets? Or who could estimate the amount of damages sustained by the city from a failure upon the part of the company to construct the road according to the agreement? Such damages from either cause might be immeasurably greater than the sum named in the contract or it might be less. Nor can it be said that the sum named as "stipulated damages," is so unreasonably large, as to induce the belief that its payment was not contemplated by the parties, and considering the advantages that may and likely have resulted to the company by virtue of its contract, the amount named does not appear to be unconscionably large.

The parties designate the amount as "stipulated damages," and the company agreed that upon the failure to construct the road, it stood bound to the city "for the full sum of fifty thousand dollars aforesaid, and in the resolution passed by the board of aldermen authorizing the mayor to make the grant, it is stated that the sum of fifty thousand dollars, the amount of the bond, is to be paid in the event the company failed to construct the road as therein mentioned.

In the case of Dakin vs. William, 19 Wend., 447, Chief Justice Nelson, said "from a critical examination of all these cases, and others that might be referred to, it will be found that the business of the court, in construing this clause of the agreement, as in respect to every other clause thereof, is to inquire after the meaning and intent of the parties, and when that is clearly ascertained from the terms and language used, it must be carried into effect, etc., etc.

"Men may enter into improvident contracts when the advantage is knowingly and strikingly against them; they may also expend their property upon idle or worthless objects, or give it away if they please, without an equivalent, in spite of the powers or interference of the court, and it is difficult to see why they may not fix for themselves, by agreement in advance, a measure of compensation, however extravagant it may be, for a violation of their covenant, without the intervention of a court or jury. Can it be an exception to their

power to bind themselves by lawful contract? We suppose not," etc.

If it be said that the measure is a hard one, it may be replied, that the defendant should not have stipulated for it, or having been thus indiscreet, they should have sought the only exemption which was still within their power, namely, the faithful fulfillment of their agreement.

Acting upon the well settled rules of construction hereinbefore noticed, we have no hesitation in holding, that the amount named in the bond, is stipulated damages, and recoverable as such, taking the allegation of the petition as true.

We conclude that the general and special exceptions to appellant's petition were erroneously sustained by the court, and that the judgment ought to be reversed and the cause remanded.                                              A. T. WATTS,
                                   For Commissioners of Appeals.

Report of Commissioners of Appeals examined, their opinion adopted and the judgment reversed and cause remanded.
                                              ROBERT S. GOULD,
                                                   Chief Justice.

Mr. Stayton, J., being of counsel for appellant, did not sit n this case.