IN THE MATTER OF THE APPLICATION OF THE ROCHESTER WATER COMMISSIONERS TO ACQUIRE LANDS OF THE ROCHESTER WATER COMPANY.

While a corporation cannot, under a power to take lands for a public use, take from another corporation having the like power lands held by the latter for a public use pursuant to its charter, yet an easement may be acquired, *in invitum*, in such lands when it may be enjoyed without detriment to the public or without interfering with the use to which the lands are devoted.

So, also, lands held by a corporation or public body, but not used for or necessary to a public purpose, may be taken as if held by an individual owner.

The R. W. Co. was incorporated for the purpose of supplying the city of R. with water. It owned lands on the margin of H. lake, and claimed to own, as riparian proprietor, the waters of said lake. The water commissioners of the city of R., under statutes authorizing the city to acquire by proceedings, *in invitum*, easements in lands for the purpose of procuring a water supply for the city, instituted such proceedings to acquire a right to dig a trench across certain specified lands of the R. W. Co. to the lake, and to lay a pipe therein for the purpose of carrying the water of the lake to the city. *Held*, that the rights of the respective parties to the water of the lake were not involved in the proceedings, nor did the petition or orders granted, in pursuance thereof, seek to confer upon the city any right to take or use the water, or to do any act to the detriment of a riparian proprietor; that all that could be, or was sought to be, acquired thereunder was an easement of laying pipes and conveying through them any water to which the city had a right; that, therefore, the granting of the petition was not an interference with the corporate rights and franchises of the R. W. Co., or with the use of the lands for the purposes of its organization.

The proceedings were instituted under section 23, chapter 771, Laws of 1872, authorizing proceedings by the water commissioners in the manner prescribed by the general railroad act. It was claimed that this section was repealed by chapter 33, Laws of 1875 (§ 1), entitled "An act supplementary" to the act of 1872, which declares that said section "is hereby amended so as to read as follows:" Following which is new matter entirely omitting all the original section. *Held*, that while ordinarily, and in the absence of any legislative intent to the contrary, an amendment in this form would work a repeal of the original section, yet, as so to hold in this case, would render the whole provision meaningless and ineffectual for any purpose; and as it appeared from the language of the statute and the amendment, from the title of the act and from chapter 39, Laws of 1875, re-enacting the original section 23, with the amendment added, that it was the legislative intention not to repeal but to add a new clause to said section, effect would be given to the intent rather than to the literal terms of the act.

Also *held*, that the proceedings were properly instituted by the board of water commissioners, and without using the name of the municipal corporation or stating in terms that they acted for the city; that as the commissioners' acted in the execution of a statutory trust, the law made it a proceeding in behalf of the city, and gave to the city all property, rights and privileges acquired.

(Argued May 30, 1876; decided June 20, 1876.)

THERE were two appeals in this matter. The one from an order of the General Term of the Supreme Court in the fourth judicial department affirming an order of Special Term appointing commissioners on the petition of the Board of Water Commissioners of the city of Rochester to appraise the damages of the Rochester Water Company. The other, an appeal from an order of said General Term affirming an order of Special Term confirming the report of commissioners so appointed.

It appeared that the Rochester Water-works Company was incorporated in 1852, with authority to purchase and hold real estate and to take water from lakes, streams, etc., for the purpose of supplying the city of Rochester with water. It purchased large tracts of land bordering on Hemlock lake, which is about twenty miles from the city, including the outlet of said lake, and laid pipes from the lake to the city with the necessary works to regulate the flow of water; afterwards the

Rochester Water Company was incorporated and acquired all the property, rights and franchises of said The Rochester Water-works Company.

Under the act "to supply the city of Rochester with pure and wholesome water," a board of water commissioners was appointed, and surveys, maps and plans were adopted providing for the supplying said city with water, by conveying the same in a conduit from Hemlock lake. By an act passed May 20, 1872, entitled "An act to amend the several acts relative to the city of Rochester" (chap. 771, Laws of 1872, § 22), the said water commissioners were authorized to acquire "by purchase for the city of Rochester, the title to any lands, waters, lakes, springs, streams or any easement therein," and by section 23 of said act, in case the commissioners should be unable to purchase, they were authorized to take such proceedings as are provided for in the general railroad acts to acquire such title. On the 26th of February, 1875, another act was passed (chap. 33, Laws of 1875), entitled "An act supplementary to an act passed May 20, 1872, entitled 'An act to amend the several acts relating to the city of Rochester.'" This act provides that section 23 of said act of 1872 be amended so as to read as follows:

"§ 23. In case the said water commissioners shall seek to acquire any lands or any easement, water or other right or privilege in or connected with any lands which shall belong to any corporation having the right of taking property for a public use, commissioners of appraisal shall not be appointed, unless it shall appear to the court that the title, right, interest, water right, easement or privilege so sought to be acquired does not embrace any of the special corporate rights, privileges or franchises granted to the corporation owning such lands or other rights, nor any thing which is essential to the exercise and enjoyment of such corporate rights and privileges. And in case commissioners are appointed by the court, the water commissioners shall acquire no greater or other rights by the proceedings than they could have acquired if the property, right or privilege sought had belonged to a private individual;

and in the estimate of damages made by such commissioners of appraisal, nothing shall be included for any corporate right, interest, privilege or franchise of the corporation owning the property to be taken, but the same shall be estimated precisely as if the property belonged to some private individual."

On March 3, 1875, another act was passed (chap. 39, Laws of 1872) amending the said original section 23 "so as to read as follows:" Following which was the original section entire, with the section 23, as contained in said chapter 33, Laws of 1875 added.

The petition herein set forth these various acts, and also alleged that the board of commissioners have commenced the construction of water-works to introduce water into the city from Hemlock lake; that for such purpose they desire to acquire the right or easement in certain of said lands so owned by the water company, adjoining Hemlock lake, which lands were specifically described in the petition, " of entering upon the lands so described and digging therein the necessary trench, and laying in such trench, when the same is dug, the necessary pipes, gates, stop-gates, blow-off pipes, etc.; to continue their line of conduit pipe and conduct water from Hemlock lake to the city of Rochester, together with the right, at all times, to enter upon said premises to maintain, repair and replace said pipe and its attachments; that they require and desire to secure the whole of the land so described for the storing of earth excavated, and material while digging said trench, laying said pipe and covering the same, when the surface of the ground will be restored to its present condition as nearly as may be."

The order, confirming the report of the commissioners appointed to award damages, recites " that the easement sought to be acquired by the petitioners, and for which such compensation was awarded, is as follows;" then follows a description of the easement in the language of the petition above quoted.

*Geo. F. Comstock* for the appellant. The city commissioners had no right, under the act of June 13, 1873, to appropriate and divert the water supply of the company, with or without

compensation. (*Bloodgood* v. *M. and H. R. R. R. Co.*, 18 Wend., 16; *Rogers* v. *Bradshaw*, 20 J. R., 735; *People* v. *Hayden*, 6 Hill, 361, 362; *Smith* v. *Helmer*, 7 Barb., 417.) The intention of an act to appropriate to public use lands already acquired by a private corporation for a public use under due authority, cannot be inferred but must be expressly and clearly stated in the act. (*Inhabitants of Springfield.* v. *Conn. R. R. Co.*, 4 Cush., 63; *In re Boston, etc., R. R. Co.*, 53 N. Y., 574; *W. R. Bridge Co.* v. *Dix*, 6 How. [U. S.], 507; *Dart. Col. Case*, 4 Wheat., 699; *Comm.* v. *Essex Co.*, 13 Gray, 252; *Miller* v. *State*, 15 Wall., 498.) The act of March 3, 1875, violated section 17, article 3 of the Constitution. (14 Ala., 9; 5 Ind., 327; 6 id., 31; 9 id., 154; 13 id., 31; 36 Ill., 385; 22 Cal., 434.)

*W. F. Cogswell* for the respondents. The petitioners had the right to acquire the easement in question over the appellant's lands. (*N. Y. C. and H. R. R. R. Co.* v. *M. G. L. Co.*, 5 Hun, 201.) The courts in interpreting a statute must be governed by the obvious intention, even if in conflict with the literal reading. (*W. Tpke. Co.* v. *McKean*, 6 Hill, 618; 1 Kent's Com., 460, 462 [m. p.]; *People ex rel. Furman* v. *Clute*, 50 N. Y., 451–456; Smith's Com. on Consts. and Stat., 698, 700; *State* v. *Buckley*, 2 Blackf., 249; *Peytoux* v. *Moseley*, 3 Mon. [Ky.], 77; *Nares* v. *Rowles*, 14 East, 510.) Upon the motion to confirm the appraisal no other question could be raised, except as to the regularity of the proceedings and report of the commissioner. (Laws 1850, chap. 140, § 17, p. 219; *N. Y. and E. R. Co.* v. *Smith*, 5 How. Pr., 117.)

ALLEN, J. There are two appeals by the Rochester Water Company in these proceedings; the one from an order appointing commissioners of appraisal, the other from an order confirming the appraisal by the commissioners of damages for lands taken by authority of law for a public use. The statutes under which the proceedings were taken did not

authorize the taking from the appellant any special corporate rights, privileges or franchises or any property or other thing essential to the exercise and enjoyment of the corporate powers and rights conferred by its charter. The power of the legislature of the State to deprive corporations of their franchises and take from them the property necessary to their enjoyment, in the exercise of the sovereign right of eminent domain, upon making compensation, is not disputed. But this must be done by special act of the legislature and under a power granted in express terms.

A corporation, either private or municipal, cannot, under a general power to take lands for a public use, take from another corporation having the like power lands or property held by it for a public purpose pursuant to its charter. (*In re Boston & Albany R. R. Co.*, 53 N. Y., 574.) But an easement may be acquired *in invitum*, by legislative authority, in lands held and occupied for a public use when such easement may be enjoyed without detriment to the public or interfering with the use to which the lands are devoted. (*New York Central and Hudson River Railroad Company* v. *Metropolitan Gas-light Company*,* recently decided by this court and not yet reported, affirming the judgment in 12 New York Supreme Court Reports, 201.) So, too, lands held by a corporation or by a public body, but not used for or necessary to a public purpose, but simply as a proprietor and for any private purpose to which they may be lawfully applied, may be taken as if held by an individual owner. The property rights of a corporation in lands not held in trust for a public use are no more sacred than those of individual proprietors. The law only protects from condemnation for public purposes lands actually held by authority of the sovereign power for or necessary to some public purpose or use. Lands held upon a special trust for a public use cannot be appropriated to another public use without special authority from the legislature. If, therefore, the object of these proceedings or the effect of the orders granted is to deprive the appellant of any of its corporate franchises and privileges

* 63 N. Y., 326.

or take from it property or lands held in trust for a public use or necessary to the exercise of the powers and the enjoyment of the privileges conferred by the act of incorporation, the orders cannot be sustained. The orders conform to the petition and subject to an easement for the laying of water pipes by the respondents a narrow strip of land owned by the appellant upon the margin of a stream, the outlet of Hemlock lake. It is true that as well the petition as the orders state the object and purpose for which these pipes are to be laid, to wit, the taking of water from Hemlock lake and conveying the same to Rochester. But it is not assumed or adjudged that the respondents have any right to the waters of the lake or to take or use the same for any purpose, or that they have the right to a foot of land upon the lake and outlet or elsewhere, or that any rights will be acquired to take or use the water or occupy or impose a burden upon any premises other than the strip of land actually condemned; and the orders do not, in terms or by implication, confer upon the respondents any right to take or use the water of the lake or to take or use any land other than the narrow strip described, or to do any act to the detriment or injury of any riparian owner of lands upon the lake or outlet or claiming or having an interest or title to or right to use the waters of the lake or stream. The rights of the respective parties to these proceedings to the waters of the lake or the lands upon its shores or other franchises in respect to the same were not involved in the proceedings and could not be determined or adjudged. All that is said in respect to the lake, its waters and the use of its waters is merely descriptive and for the purpose of showing the propriety of granting this easement to complete the connection between Rochester and the lake upon the assumption that the respondents had acquired or might acquire the right to take the water and convey it to Rochester by the route described. The orders conclude no one and are not evidence against any one except in respect to the easement especially mentioned of laying the pipes across this narrow strip and conveying any water through them which the respondents should have a right to

take and bring to that point, to be conveyed thence to Rochester. Whatever rights the appellant has in the waters of the lake or the outlet, or whatever rights it has as a riparian owner of other property or of mills, they are not affected by the proceedings and orders now before us. If the orders are more extensive in their operation and effect than stated, they were not authorized by law and should be reversed. But, in the view we take of them, which is the same as that taken and urged by the counsel for the respondents, no other effect can be given to them than to subject this narrow strip of land to this particular easement, leaving every other question of property or corporate rights and damages that can arise between the parties to be determined hereafter, if any question shall arise.       •

The question next in order is, whether at the time these proceedings were instituted, in May, 1875, they were authorized by any statute then in force. The solution of this question depends upon the answer to another, to wit, whether section 23 of chapter 771 of the Laws of 1872, which authorized proceedings by the respondents to acquire title and other rights in and to lands, waters, etc., in the manner prescribed by the act authorizing the formation of railroad corporations and the acts amendatory thereof had or had not been repealed. The claim is that it was repealed by chapter 33 of the Laws of 1875. Section 1 of that act declares that section 23 of the act mentioned "is hereby amended so as to read as follows." Then follows a section as "section 23," entirely omitting every part of the original section and made up of entirely new matter, and providing merely for the acquisition of lands, easements, water rights, etc., owned by a corporation having the right of taking private property for public use. But the section, as incorporated, contemplates the continuance of the power to take lands and other rights upon an appraisal as prescribed by the statutes regulating the taking of lands by railroad corporations. It restricts the power of appointment of commissioners of appraisal, declares what rights shall be acquired in case commissioners shall be.

appointed, and establishes the rule by which such commissioners of appraisal shall be governed in estimating the damages for lands and other rights belonging to corporations, and taken pursuant to the amendment. If section 23 of the Law of 1872 was intended to be, or was in fact, repealed and this substituted for it, these provisions would be meaningless, and the entire section substantially without practical effect. There would be no authority for a proceeding to take lands upon the appraisal of commissioners for the purposes named, or the appointment of commissioners of appraisal for any purpose. It is quite evident that the intent of the legislature was not to substitute the one section for the other, or to repeal the section as found in the act of 1872, but to add a new clause to it and to subject to its operation a new class of cases. The intent would have been carried out if the enactment by chapter 33 of 1875 referred to had amended the act of 1872 by adding a new clause containing the matter of the latter act to the section professedly amended, but, upon the theory of the appellant, really stricken out and repealed. The intent to continue the original section in force, with this new clause added, is made more apparent by reference to chapter 39 of the Laws of 1875, passed five days thereafter, which re-enacts section 23 of the act of 1872, with section 23 of chapter 33 of 1875 added to it. The amendment was accomplished in the same form by enacting that the original section should be "amended so as to read as follows," and then inserting the original section and the supplement as one section. The last act is challenged as violative of section 17, article 3, of the Constitution, so far as the provisions of the railroad acts regulating proceeding for the acquisition of lands for public use are made applicable, by a mere reference thereto, and without inserting the provisions in the act. If this objection is well taken, and we are not prepared to say that it is not, the validity of these proceedings depends upon the effect to be given to chapter 33 of the Laws of 1875. Ordinarily, and in the absence of any evidence of a legislative intent to the contrary, a substitution of one section for another

by an amendment in the form in which this amendment was accomplished, would work a repeal of the original section from the time of the amendment, and as affecting all cases thereafter arising. But when, from the language of the statute and of the amendment, a different intent is apparent, such effect will not be given to it; and where other acts of the legislature, passed at or about the same time, corroborate the evidence of intent, as gathered from the statutes under review, the duty of the courts is to give effect to the intent rather than to the literal terms of the act. The intent must not be conjectured, but must be apparent from all the statutes taken together, and consistent with the whole purpose and object as well of the original statute as of the amendment. This rule of interpretation is of frequent application, and is one of the most important and familiar canons of construction. It is not unfrequently necessary to resort to this rule of interpretation to prevent a miscarriage of the legislative intent and detriment to public interests. (*People* v. *Clute*, 50 N. Y., 451; *Smith* v. *The People*, 47 id., 330, and the authorities cited).

To hold that a repeal of this part of the act of 1872 was accomplished by the first act of 1875, would be to thwart the evident intent of the legislature, render the whole provision ineffectual for every purpose, and convict the legislature of enacting a law which was a nullity. The act should rather be construed so as to give it effect, especially as that can be done consistent with the purpose and object of the entire provision. The title of chapter 33 of the Laws of 1875, as "an act supplementary" to the act of 1872, is very persuasive evidence that it was not the intent to repeal any part of the act, or to substitute any other provisions in lieu of those contained in it, but, as its title declares, to supplement its provisions. The effect of the act was not, therefore, we conclude, to repeal section 23 of the act of 1872; but to add to it. It follows that these proceedings were properly instituted and the court had jurisdiction.

The objection is also taken, that these proceedings should

have been instituted in the name of the city of Rochester. The board of water commissioners were by the act authorized to make the application, and were the actors in the proceedings, and we see no reason to doubt that, as a board, they were authorized to take the proceedings upon their own motion, and as commissioners, without stating in terms that they acted for the city, or using the name of the corporation, although the title, when acquired, would be for the city of Rochester. The mere formal amendment of the petition and the other proceedings, stating them to be for and in behalf of the city, would be all that would be necessary to obviate this objection. But acting as they do under the statutes as a board of commissioners for the city of Rochester, and in the execution of a statutory trust, the law makes it a proceeding for and in behalf of the city, and all the property, rights and privileges that are acquired the law gives to the city and not to the commissioners. There is no valid objection to the form of the application or defect of parties to it.

The objection to the order confirming the appraisal is answered by the fact that the appraisers were not authorized to award any damages except for the strip of land actually taken, and that no other property and no other rights were involved in the proceedings. The appraisers, therefore, very properly refused to hear evidence as to any other injury, or to make any allowance for any diversion of water or the deterioration in value of any other property or privilege. These views lead to an affirmance of the orders without considering other and perhaps more serious questions that were raised and forcibly presented by the learned counsel for the appellant.

The orders must be affirmed.

All concur.

Orders affirmed.