## PEOPLE *ex rel.* BARRON *v.* MARTIN *et al.,* Police Commissioners.

*(Supreme Court, Special Term, New York County.  October, 1892.)*

BOARD OF ELECTION INSPECTORS—POWER OF MAJORITY TO ACT.

> Consolidation Act, (Laws 1882, c. 410,) § 1850, provides for four inspectors of election to superintend the registration and voting in each election district in the city of New York.  Section 1876 requires all acts of the board to be done with the assent of a majority of the members, and section 1877 requires a majority of the members to be in constant attendance during the hours and times fixed for the discharge of their official duties.  *Held,* that these provisions clearly show the legislative intention to enable a majority of the members to perform the duties imposed on the board, and that therefore Laws 1892, c. 400, p. 823, which amends the consolidation act so as to reduce the number of inspectors to three, instead of four, by implication also modifies sections 1858 and 1865 of such act, which require the qualification of voters to be determined, and the votes to be received, by "at least three of the board," so as to enable such duties to be performed by only two of the new board; and this construction is strengthened by the fact that the election system adopted by the legislature at the same session for other portions of the state provides for three inspectors, and authorizes a majority to act; and that Laws 1892, c. 677, § 19, also passed at the same session, authorizes a majority of a board of public officers composed of three or more members to perform all the duties and exercise all the powers of the board.

At Chambers.  Application by Thomas W. Barron for a writ of prohibition to James J. Martin and others, as police commissioners.  Writ denied.

*James W. Hawes,* for relator.  *David J. Dean* and *Theodore Connoly,* for respondents.

INGRAHAM, J.  The question that I am here asked to determine is one that is not free from doubt, and, as a prompt decision is required, I have time merely to state the conclusion to which I have arrived.  The chapter provid-

ing for the conduct of elections in the city of New York, contained in the consolidation act,[1] in force prior to the amendment of 1892, provided a consistent scheme for the registration of voters and the casting of votes on election day, based upon the fact that in each election district four inspectors of election were provided, who should determine the various questions presented as to the registry of voters and the voting of such persons as should be registered on election day. Section 1876 expressly requires that all acts of the board of inspectors should be by the concurrence or assent of a majority of all the inspectors of election in any election district. Thus, any duty devolving upon the inspectors as a board could only be performed by three inspectors. Both sections 1858 and 1866, in requiring the concurrence of three inspectors, expressly recognized that in each election district there are more than three inspectors of election. Thus, in section 1858 the question as to the qualification of the person presenting himself for registration is to be determined by "at least three of the board of inspectors of election," and section 1866 provided that, if the vote of a person presenting himself to vote is received, "at least three of the inspectors" shall write in the appropriate column bearing the heading "Voted," and opposite the name and residence of such person, the word, "Yes." And the section also provides that the chairman of such inspectors in each election district shall, if present, and, if absent, then one of the other inspectors shall, upon any person offering to vote, announce, in a loud, clear, and distinct manner, the name of such person, showing that the provisions of this section were based upon the fact that there were more than three inspectors of election. Section 1877 also emphasizes the intention of the legislature. It is there provided that it should be the duty of said inspectors of election, or a majority of said inspectors, to be in constant attendance during the hours and times fixed for the discharge of their official duties. Reading the whole chapter, the one clearly expressed intent was that a majority of the inspectors should be required to assent to each act of the board, and that it was not the intention to require that all of the inspectors should be present when the board was to act as a board; where there were four inspectors, that at least three should be present, and three should determine the questions that the board, as a board, had to determine. The object of this provision is clear, for the consequences of stopping the whole business of receiving votes on election day, because of the absence or inability to act of one inspector, would be that many persons would be, in effect, disfranchised, and the whole machinery of election thrown into confusion. By the amendment to section 1850, provided for by chapter 400 of the Laws of 1892, p. 823, the provision of this chapter of the consolidation act was changed so as to provide for but three inspectors of election, instead of four, in each election district. Then two, instead of three, became a majority of the inspectors in each district. By section 1877 two were required to be present at the times fixed for the discharge of their several duties, and the assent of two was required before the board could act.

I think it clear that the language used in sections 1858 and 1866 must give way to this obvious intent of the legislature. The language used in those sections would be inapplicable to a board of three inspectors. In the construction of statutes, and considering the effect of such an amendment as the one now in consideration, it is the duty of the court to ascertain and carry out as far as possible the intention of the legislature as expressed in the acts themselves, and, where that intention is clear, it is the duty of the court to disregard any terms used which would in effect defeat such intention; and to hold that the presence of all the inspectors was necessary before the board, as a board, could act would expressly defeat the intention of the legislature, as shown through all the provisions of the act, that the presence of a majority of the board was sufficient to authorize the board to perform the duties im-

[1] Laws 1882, c. 410.

posed upon it, and this conclusion is greatly strengthened by the system
adopted by the legislature for other portions of the state, where three inspect-
ors of election are provided for, and where a majority of such officers are
authorized to perform the duties required of the board, and that at the same
session of the legislature at which the act of 1892 was passed, by section 19
of chapter 677, known as the "Statutory Construction Law," it is provided
that whenever three or more public officers are given any power or authority,
or three or more persons are charged with any public duties to be performed
or exercised by them jointly or as a board, a majority of all such persons or
officers, at a meeting duly held at a time fixed by law, may perform and exer-
cise such powers or duty.

I agree with counsel for the relator that if the law is clear the court has
nothing to do with the consequences of enforcing it, but that the law as writ-
ten must be enforced.    But where the question of constructive repeal or mod-
ification of the provisions of law is to be determined, the object sought to
be obtained is always to be considered, and it is the duty of the court, where
such object is clearly expressed, to give force to the intention of the legisla-
ture, and so far as possible to carry such intention into effect.    This prin-
ciple has been many times applied by the courts in construing acts of the leg-
islature.  In *Railroad* v. *Roach,* 80 N. Y. 344, EARL, J., says: "The law-
makers cannot always forsee all the possible applications of the language they
use, and it frequently becomes the duty of the courts, in construing statutes,
to limit their operation so that they shall not produce absurd, unjust, or in-
convenient results not contemplated or intended.    A case may be within the
letter of the law, and yet not within the intent of the lawmakers, and in such
a case a limitation or exception must be implied."   See, also, *In re Rochester
Water Works,* 66 N. Y. 413, where it was held that when, from the lan-
guage of the statute and an amendment, a different intent from that which
would undoubtedly apply from the language used is apparent, such effect
will not be given it, and when other acts of the legislature, passed at or
about the same time, corroborate the evidence of intent, as gathered from the
statutes under review, the duty of the court is to give effect to the intent
rather than to the literal terms of the act; and *Chase* v. *Lord,* 77 N. Y. 18.

My conclusion, therefore, is that, under the statutes as they now exist, a ma-
jority of the inspectors of election of each district has power to act as a board
of inspectors, and that the relator was not justified in refusing to act be-
cause of the absence of one inspector.  I have not considered, and do not in-
tend to decide, that in this case a writ of prohibition is the proper remedy.
As I have come to the conclusion before stated, it is not necessary to pass
upon that question.  The application for a writ must therefore be denied.