(18 App. Div. 568.)

### In re FOLTS ST., IN VILLAGE OF HERKIMER.

(Supreme Court, Appellate Division, Fourth Department.    June 12, 1897.)

1. MUNICIPAL CORPORATIONS—NEW STREETS—NECESSITY.
    The decision of a village to open a new street is conclusive as to the necessity and propriety of such street, as against a railroad company whose tracks are crossed thereby.

2. SAME—STREETS OVER RAILROAD YARDS.
    Under Laws 1853, c. 62, authorizing villages to lay out streets over railroad tracks, a street may be laid out over side tracks running with the main track, and within the yard limits; the crossing being at grade, and interfering with no building of the railroad company.

3. EMINENT DOMAIN—STREETS—PROPERTY TAKEN FOR PUBLIC USE.
    The rule that lands devoted to one public use cannot be taken for another without express legislative authority applies only to the taking of the beneficial use of the land from the grantee of the first public use, and does not apply to the laying out of a street over a railroad right of way.

4. SAME—LEGISLATIVE AUTHORITY.
    Laws 1870, c. 291, tit. 7, § 1, relating to the incorporation of villages, and providing that they may take "any land" within their limits in laying out streets, authorizes the taking of railroad rights of way for that purpose.

5. SAME—STREET OVER RAILROAD TRACKS—COMPENSATION.
    A village being entitled, under Laws 1853, c. 62, to lay out streets over railroad tracks without compensation to the railroad company, such company cannot complain that there is no authority for the appointment of a commission under Laws 1896, c. 243, § 2 (amending the village corporation act), to assess damages to landowners by such street.

6. COUNTY COURTS — JURISDICTION OF NONRESIDENTS — CONDEMNATION OF STREETS.
    The restriction of the jurisdiction of the county court over nonresidents by Const. art. 6, § 14, providing that no action shall be authorized therein "for the recovery of money only where the sum demanded exceeds $2,000 or where any person not a resident of the county is a defendant," applies only to actions for the recovery of money, not to a proceeding under Laws 1896, c. 243, to assess damages to landowners by the laying out of a street.

Appeal from Herkimer county court.

In the matter of the proposed extension of Folts street, in the village of Herkimer.    From an order of the county court appointing three commissioners to assess damages by the proposed extension, the New York Central & Hudson River Company and the Mohawk & Malone Railroad Company, owners of land to be crossed by such extension, appeal.    Affirmed.

Appeal from an order made by the county court of Herkimer county, entered on the 1st day of March, 1897, appointing three disinterested commissioners to assess the damages caused by the extension of Folts street, and taking lands therefor, in the village of Herkimer, as provided by chapter 291 of the Laws of 1870, as amended    In February, 1897, the village of Herkimer, being an incorporated village (under chapter 291 of the Laws of 1870), through its board of trustees presented a petition to the county court of Herkimer county, set-

ting forth, among other things,."that on the 5th day of January, 1897, the petition of at least ten freeholders residing in said village of Herkimer was presented to the board of trustees, and filed in the office of the clerk of said village, said petition praying for the opening, laying out, and extension of Folts street, in said village, easterly and southerly from its present easterly terminus to Albany street, and describing the land to be taken, and stating the owners thereof; that on the presentation of such petition that board met and examined the same, and decided the improvement should be made, by resolution entered in the minutes of the board; that said board of trustees thereupon put up in five public places in said village a correct description of the lands to be taken to make such improvement, and the notice that the trustees, at the village board rooms, on Main street, in the village of Herkimer, N. Y., and on the 2d day of February, 1897, at 8 o'clock p. m., would meet and hear any objections that might be made to the taking of such land or making such improvement; that said notices were duly posted in five public places in said village at least five days before the 2d day of February, 1897, and copies of said notice were also served personally on [certain residents of the village], and also, at least twenty days before the 2d day of February, 1897, copies of said notice were served by mail [on the appellants, naming them], both of said companies being named in said petition as the owners of the lands sought to be taken, or interested therein." The petition further showed that on the 2d of February the attorney for the appellants appeared before the trustees, pursuant to the notice, and procured an adjournment of the proceedings until the 10th of that month, when he again appeared, and objected to the opening of the street on the grounds that the lands of the companies that would be crossed thereby were necessarily used by them for a railroad yard, and already devoted to a public use, and could not be used for another such use without legislative sanction, and he filed a couple of affidavits to sustain such objections. The board of trustees, after such hearing, approved of the petition, and declared, by resolution entered in their minutes, their intention to make the said improvement, and proceeded to obtain possession of the lands described in the manner provided by chapter 291 of the Laws of 1870, as amended, and the petition prayed for the appointment of commissioners. This petition was duly presented to the county court of Herkimer county on the 1st day of March, 1897, and the attorney for the appellants appeared, opposed the application, filed an affidavit showing that the principal place of business of the Mohawk & Malone Railroad Company was New York City, and of the other appellant, the city and county of Albany, and filed a statement of objections, reiterating those taken before the trustees, and averring in addition that chapter 243 of the Laws of 1896 was unconstitutional, in providing that the county court could appoint commissioners to appraise damages of the property of a nonresident, and presented the affidavit read before the trustees. These affidavits set forth that the proposed street in the village of Herkimer would intersect at right angles the tracks of the Mohawk & Malone Railroad Company, which was a single-track railroad, passing through the village, and had been leased to the New York Central & Hudson River Railroad Company; that at the place of intersection there were four side tracks running along with the main track; that there was an engine house 300 feet south of the said crossing, coal sheds for the coaling of locomotives situate 150 to 200 feet south of the crossing, and that 600 feet south of the crossing there were sand houses, where sand was obtained for the use of the locomotives. The affidavit set forth the claim that the place of crossing was within the yard limits of the company for slowing trains, which limits were about 5,000 feet north of the crossing, and that the yard of said railroad extended one-half mile north of the crossing, and about 1,200 feet south of it. It is evident from the papers in the case that the crossing would not interfere with any building or structure of the company, and would be at grade with its tracks.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles E. Snyder, for appellants.
Robert E. Steele, for respondent.

WARD, J.　The determination of the respondent that a street should be opened in the village through the lands of the appellants was conclusive as to the necessity and the propriety of such street. People v. Delaware, L. & W. R. Co., 11 App. Div. 280, 42 N. Y. Supp. 1011, and cases cited.　Under the laws of this state, the respondent had the choice of two proceedings in the premises, one being authorized by chapter 62 of the Laws of 1853, which declare it to be lawful "for the authorities of any city, village or town in this state who are by law empowered to lay out streets and highways to lay out any street or highway across the track of any railroad now laid or which may hereafter be laid without compensation to the corporation owning such railroad; but no such street or highway shall be actually opened for use until thirty days after notice of such laying out has been served personally upon the president, vice president, treasurer or a director of such corporation."　And the other proceeding could be taken under chapter 291 of the Laws of 1870, being the act for the incorporation of villages, and the various amendments thereto.　By subdivision 25 of section 3 of title 3 of that act, the trustees of the village are authorized "to lay out and open new roads, alleys and streets."　And it is further provided in section 1 of title 7 of that act that a village incorporated thereunder should constitute a separate highway district, and "shall have power to discontinue, lay out, open, widen, alter, change the grade, or otherwise improve roads, avenues, streets, public parks or squares, lanes, cross walks and side-walks; and for that purpose may take and appropriate any land in said village; but no road　*　*　*, shall be opened or altered unless all claims for damages on account of such opening or altering shall be released without remuneration, except on the written petition of at least ten free-holders residing in said village, which petition shall specify the improvement to be made, describe the land to be taken, state the owner or owners thereof, when known, and shall be filed in the office of the clerk of the village."　Provision is further made for the assembling of the trustees, and the proceedings stated in the petition herein.　Section 2 of title 7 of the act we are considering was amended by chapter 243 of the Laws of 1896, taking effect on the 15th of April of that year, and provided for the appointment of three commissioners by the county court to assess the damages to the landowners and persons interested in the route of the proposed highway.　The commissioners were required to determine and award the owner of such lands such damages as he would sustain by the proposed alteration or improvement, after making allowances for any benefits that he might derive therefrom.　This decision was required to be filed with the village clerk, and, within 20 days after the filing, provisions were made for confirming or vacating the decision of the commissioners by the court, which decision was to be final unless proceedings were duly taken for that purpose.　The determination of the village authorities to open the street and take the land necessary for that purpose was necessary, as a preliminary step in proceeding to cross the railroad lands, under either of the statutes cited.　Under the statute of 1853, it is only necessary, after such determination has been made, that the 30-days notice required

by that statute should be given to open the highway for use. The further duty of opening the same across the track devolved upon the railroad company. Under the law providing for the incorporation of villages for the purpose of ascertaining the damages only, the proceedings must be had for the appointment of commissioners in the county court; but the two statutes may be construed together in arriving at the legislative intent as to the right of towns and other municipalities to open streets and highways that shall cross railroad tracks, and they seem to indicate a well-defined policy in favor of the right to make such crossing under proper conditions. In construing the act of 1853, it was held, in Railroad Co. v. Brownell, 24 N. Y. 345, that a highway could not be laid out over grounds acquired by a railroad corporation for the site of an engine house, and necessary for its use at a station. And in Boston & A. R. Co. v. President, etc., of Village of Greenbush, 52 N. Y. 510, it was held that the act of 1853 did not authorize the laying out of streets and highways across the tracks of any railroad which were used for storing cars, or exclusively for making up trains. In President, etc., of Delaware & H. Canal Co. v. Village of Whitehall, 90 N. Y. 21, under the statute of 1853 it was held that the word "track" signifies the entire roadbed, and not merely the iron or railway, but roadbed, including turnouts and switches, or other contrivances for passing engines or cars from one line of rails to another, or for public-traffic purposes. In that case the court found that the railroad premises sought to be crossed were "five rods in width, covered by four railroad tracks, two of which are main tracks of the railroad, for the passing of cars, and two of which are extra tracks extending several hundred feet both to the north and south of the proposed street crossing, and are used, in connection with others, for switching cars, making up trains, and for allowing cars to stand upon them until they can be put into trains about to depart," which are characterized "more like a yard for the transfer of cars, than depot grounds." The court here sustained the contention of the village, as against that of the railroad company, and Judge Danforth concludes the opinion with a statement which seems to refute the contention of the appellants here, that the railroads in the case at bar should be protected from this street crossing, because it was a "railroad yard," and is as follows:

"To hold otherwise would enable a railroad company, by judicious adjustment of switches, turnouts, turntables, water tanks, and other accessories of its roadway or business, so to control its whole way as to exclude new streets or highway crossings at any point along its line."

The learned counsel for the appellants earnestly contends that the railroad lands sought to be crossed, having been devoted to one public use, cannot be taken for another without special authority from the legislature; citing In re City of Buffalo, 72 Hun, 422, 25 N. Y. Supp. 218, and cases there cited. This rule only applies where it is sought to deprive the person or corporation to which the first public use is granted of the substantial use of the property. An easement may be acquired in invitum in such property when it may be enjoyed without detriment to the public, or without interfering

with the use to which the lands are devoted.    In re Rochester Water Com'rs, 66 N. Y. 413.    The respondent in the case at bar did not seek to deprive the appellants of the title to their property, or of its beneficial use, but to secure a passage for the public, as a right of way over the lands.    Again, it will be observed that the village corporation act authorizes the village to take any lands within its borders.    Is this not a legislative declaration of the right to use the railroad lands for streets, as well as any other lands?

The respondent has assumed in its proceeding for the appointment of commissioners that the appellants would sustain damages by crossing their tracks, which damages should be assessed and paid before the street could be opened.    Of this the appellants complain,—not that they have not sustained damages, but that the county court had no power to appoint commissioners to assess them. Whether the appellants have sustained damages is a question to be determined by the commissioners.    They may hold that under the act of 1853 no damages should be awarded, leaving the respondent to proceed under that act, and give the 30-days notice required by it. In any event, we do not perceive how the appellants are aggrieved or injured by the proceeding.    If entitled to damages, such damages will be awarded, and the appellants will have the benefit thereof. If no damages are awarded, the appellants will be in no worse situation than if the proceedings were entirely under the act of 1853.

The appellants make the further point that the county court had no jurisdiction to appoint commissioners to assess the damages, if any, for crossing the appellants' lands with this street, because the appellants' principal place of business was outside of the county of Herkimer, and they cite the closing paragraph of section 14 of the sixth article of the state constitution, which is as follows:

"The legislature may hereafter enlarge or restrict the jurisdiction of the county court, provided however that their jurisdiction shall not be so extended as to authorize an action therein for the recovery of money only, in which the sum demanded exceeds the sum of two thousand dollars, or in which any person not a resident of the county is a defendant."

This grant of power to the legislature, as to the county courts, is not restricted, except in an action for the recovery of money, in which a person not a resident of the county is a defendant.    The proceeding at bar is not an action.    It is not an action for the recovery of money.    It is a special proceeding appertaining to the lands of the appellants, which are located in the county of Herkimer, and we entertain no doubt but that the county court had authority to appoint the commissioners.    See Raven v. Smith, 148 N. Y. 415, 43 N. E. 63.    Chapter 243 of the Laws of 1896 was passed after the constitutional amendment above quoted, authorizing the legislature to enlarge the jurisdiction of the county court.

These views lead to the conclusion that the order appealed from should be affirmed, with costs.    All concur.